UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SOCIALRYSE LLC. (d/b/a SocialRyse Music Disco),

                        Plaintiff,                        COMPLAINT

   -against –                                        Civil Action No.

YOUTUBE LLC and GOOGLE LLC.,          [Jury Trial Demanded]

                      Defendants.
------------------------------------------------------------------X

PRELIMINARY STATEMENT

1.    This action arises from Defendants YouTube LLC and Google LLC's (collectively, "YouTube" or "Defendants") wrongful, anticompetitive, and fraudulent campaign to destroy a legitimate, New York-based independent music label. After YouTube's own automated Content ID system generated and allocated over $600,000 in royalties to Plaintiff SocialRyse LLC ("SocialRyse") between September 2020 and January 2021—an acknowledgment of the legitimacy of its 100% owned music catalog—YouTube orchestrated the coercive termination of SocialRyse's distribution agreements. This was accomplished through Defendants' sudden invocation and retroactive application of a previously undisclosed 'Circumventing Content ID' enforcement rationale, which had never before been communicated to Plaintiff or publicly articulated. Upon information and belief, this enforcement escalation coincided with pressure from larger platform partners and operated to eliminate a rapidly growing independent competitor from the monetization marketplace. YouTube then fraudulently concealed its central role for years, falsely blaming SocialRyse's distributors. The interference annihilated SocialRyse's business, destroying an enterprise capable of generating in excess of hundreds of millions of dollars in

revenue over its natural commercial life, and continues to this day through covert, permanent "invalid reference" flags that prevent any reinstatement.

## PARTIES

2. Plaintiff SocialRyse LLC is a New York limited liability company with its principal place of business in Brooklyn, New York, doing business as SocialRyse Music Disco ("SRMD"). Its sole member is Ralph Cohen, a citizen of New York.

3. Defendant YouTube LLC is a Delaware limited liability company with its principal place of business in San Bruno, California, and is a wholly owned subsidiary of Google LLC. Upon information and belief, all its members are citizens of states other than New York.

4. Defendant Google LLC is a Delaware limited liability company with its principal place of business in Mountain View, California. Upon information and belief, all its members are citizens of states other than New York.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff (New York) and Defendants (California/Delaware), and the amount in controversy far exceeds $75,000.

6. This Court has federal question jurisdiction under 28 U.S.C. § 1331 for claims arising under the Sherman Act, 15 U.S.C. § 2.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred here, Plaintiff resides and suffered injury here, and Defendants transact substantial business here.

## FACTUAL ALLEGATIONS

8. SocialRyse, founded in 2018 as a digital marketing agency, expanded into creating and owning 100% of an original music catalog, which it promoted to YouTube creators. (Exhibit P).

9. SocialRyse lawfully enrolled its catalog in YouTube's automated Content ID system through authorized distributors like AdRev and Create Music Group ("CMG"). Content ID automatically detects copyrighted audio in user videos and allocates proportional advertising and subscription revenue to rights holders.

10. Plaintiff engaged in lawful marketing of its catalog of original music to the YouTube creator community as part of standard digital marketing practices in the music industry. Independent creators voluntarily chose whether to incorporate Plaintiff's tracks into their videos. Plaintiff did not control, direct, or pre-approve the non-music content of any third-party video. All detection, claims, monetization, and revenue allocation were administered exclusively through YouTube's automated Content ID system. (Exhibit M).

11. In June 2020, when YouTube, via AdRev, inquired about this model, SocialRyse explained it transparently. AdRev subsequently confirmed YouTube had approved continued monetization, stating, "Yes! All good." (Exhibit A).

12. On August 5, 2020, SocialRyse entered a Distribution Agreement with CMG (Exhibit B). The Agreement granted CMG the right to monetize SocialRyse's catalog via Content ID, with SocialRyse receiving 85% of net revenue. The Agreement had an initial one-year term with automatic annual renewals.

13. Under this agreement, SocialRyse's revenue grew exponentially, generating over $600,000 in net royalties from YouTube between September 2020 and January 2021. (Exhibit F). Monthly revenue grew from $28,790 to $216,038—a compound monthly growth rate exceeding 60%. Songs like "Quarantine" and "Water" amassed tens of millions of views. (Exhibit K).

14. Based on this demonstrated compounding growth and the automatic annual renewal structure of the CMG Agreement, SocialRyse reasonably anticipated that its YouTube royalties would continue to increase substantially over multiple years, generating large and recurring streams of net revenue. Defendants' subsequent interference abruptly cut off this trajectory and destroyed a rapidly scaling business. (See Exhibit D, summarizing monthly revenue and growth rates.)

15. Upon information and belief, In early 2021, major media rights holders (whose content often appeared in user videos alongside independent music) pressured YouTube to increase their revenue share by eliminating independent labels like SocialRyse from the Content ID ecosystem.

16. Despite the fact that SocialRyse had no direct contract or Content ID relationship with YouTube, and despite SocialRyse's undisputed ownership of one hundred percent (100%) of the copyrights in the original sound recordings and musical compositions it distributed, YouTube nevertheless targeted SocialRyse's monetization operations through covert and coercive means. Rather than identifying any published rule violation, YouTube retroactively invoked a previously unpublished and undefined enforcement rationale, "Circumventing Content ID"—to justify interference with lawful monetization activity that had already been conducted openly, reviewed by distributors, and previously allowed to operate. This concealed reclassification was never disclosed to SocialRyse at the time and was used as a pretext to destabilize Plaintiff's distribution relationships without due process, warning, or contractual authority.

17. Internal communications reveal that YouTube personnel exerted coercive pressure on Create Music Group ("CMG") to engage in mass removals of disfavored artists and labels. In a February 9, 2021, email, YouTube employee Ian Connelly explicitly directed CMG to conduct a "strong purge" of certain labels and artists. (Exhibit I). In related correspondence, YouTube further

warned that CMG's CMS functionality could be "redacted" and that monetization claims could be forced into a universal "pending" state unless CMG complied. (Exhibit I). These communications reflect YouTube's use of platform dominance and economic leverage to compel distributor action and dictate which rights-holders would be permitted to monetize.

18. On or about April 14, 2021, YouTube's Trust & Safety personnel transmitted additional internal communications to CMG containing expanded directives to remove multiple artists' reference files in furtherance of the previously coerced "strong purge" campaign. (Exhibit I). These communications reflected the continuation and escalation of YouTube's coercive enforcement strategy and that CMG aggressively deactivate monetization assets under threat of CMS feature suppression.

19. As a direct and intended consequence of YouTube's escalating coercion and threat-based leverage over CMG's CMS access, CMG terminated monetization of SocialRyse's catalog on or about March 1, 2021, citing YouTube's asserted "circumvention" concerns and related compliance pressures. (Exhibit J). Following CMG's termination, additional distributors—including RouteNote—implemented similar removals and refusals, invoking the same "circumvention" rationale. (Exhibit C). These cascading terminations occurred despite no contractual breach by SocialRyse and were economically irrational for the distributors absent external pressure, as SocialRyse's catalog was generating rapidly accelerating revenue at the time.

20. On February 23-25, 2021, YouTube's Rights Management team, in response to SocialRyse's direct inquiry, stated that revenue-sharing arrangements with channels were "out of our scope" and "YouTube does not mediate on this anymore." (Exhibit G). This directly contradicted the "circumvention" rationale YouTube was using internally.

21. Following the suspension of Plaintiff's monetization and during Plaintiff's good-faith investigation into the cause of its sudden business termination, Defendants affirmatively misrepresented that the actions taken against Plaintiff's catalog were the independent decisions of third-party distributors and not the result of any centralized directive, coercion, or enforcement by YouTube itself. In July 2021, YouTube Partner Support representatives Edjun and Haze explicitly told SocialRyse, "YouTube is not able to suspend your assets" and "we did not suspend your music, and it was your label/distributor who decided to do so." (Exhibit H). These statements were knowingly false and misleading, as internal emails evidence YouTube coerced the suspension.

22. Plaintiff reasonably relied on Defendants' repeated denials and misrepresentations that the distributors acted independently and that YouTube played no role in the enforcement or deactivation decisions. As a result of these misrepresentations and Defendants' concealment of their coercive campaign behind intermediaries, Plaintiff lacked any objective facts establishing YouTube's direct orchestration of the terminations for a substantial period. Despite exercising reasonable diligence, Plaintiff did not and could not discover Defendants' wrongful conduct until substantially later—specifically, during the discovery process in Plaintiff's lawsuit against Create Music Group ("CMG") concerning unremitted royalties, which involved document production, and communications with opposing counsel that revealed corroborating internal communications and patterns of coordinated distributor activity exposing YouTube's concealed role (Exhibit I).

23. Accordingly, Defendants' active concealment therefore tolled the statute of limitations under CPLR § 203(g) and New York common law.

24. The harm is not merely historical. To this day, YouTube continues to actively suppress SocialRyse's catalog by applying "invalid reference," "potential violation," and related enforcement flags to Plaintiff's 100%-owned sound recordings (e.g., "Clouds – Zephyr"). (Exhibit

L). These flags cause Plaintiff's references to be treated as ineligible for monetization, discourage distributors from reinstating or carrying Plaintiff's catalog, and result in the removal or deactivation of Plaintiff's reference files across multiple distributors. As a direct and ongoing result, Plaintiff's monetization revenue has been reduced to near-zero levels, and Plaintiff continues to suffer new financial injury on a daily basis. Defendants' conduct therefore constitutes a continuing tort under New York law.

24a. Following the terminations, Plaintiff diligently attempted to reinstate its catalog through multiple distributors, but YouTube's covert 'invalid reference' and 'potential violation' flags made reinstatement impossible.

24b. Upon information and belief, Defendants' continued application of unpublished enforcement flags—including "invalid reference," "potential violation," and related internal designations—functioned as a covert, platform-wide ban on Plaintiff's catalog. These non-public classifications operated as a de facto blacklist, preventing any authorized distributor from uploading or monetizing Plaintiff's 100%-owned works, regardless of ownership or compliance. This covert exclusion has never been disclosed to Plaintiff, and no neutral procedure exists to challenge or remove these flags. As a result, Plaintiff has been effectively and indefinitely barred from reentering the market for automated monetization through Content ID.

24c. Plaintiff also repeatedly attempted to communicate with the distributors who removed its catalog, but those inquiries went unanswered. Upon information and belief, distributors were unable or unwilling to engage with Plaintiff due to YouTube's non-public directives, coercive pressure, and concealed enforcement actions, which prevented distributors from providing clarification or reinstating Plaintiff's works.

25. YouTube maintains monopoly power in the market for online video monetization platforms. Its coordination with dominant industry participants to suppress independent labels like SocialRyse constitutes exclusionary, anticompetitive conduct that harms competition, innovation, and consumer choice.

## CAUSES OF ACTION

### AS FOR THE FIRST CAUSE OF ACTION
Tortious Interference with Contract (New York Law)

26. Plaintiff realleges paragraphs 1-25 as if fully set forth herein.

27. Plaintiff had a valid, enforceable Distribution Agreement with CMG. (Exhibit B).

28. Defendants knew of this Agreement through their direct dealings with CMG regarding SocialRyse's catalog and royalties.

29. Defendants intentionally and without justification procured CMG's breach of this Agreement by using wrongful means, including coercive threats of severe penalties (e.g., "the hammer falls on Create") to force CMG to suspend SocialRyse's assets. (Exhibit I).

30. But for Defendants' tortious interference, coercion, and behind-the-scenes pressure applied to Plaintiffs distributor, CMG would have continued performing under the automatically renewing Agreement, generating enormous revenue for SocialRyse.

31. As a direct and proximate result, SocialRyse has been damaged in an amount to be proven at trial, but not less than $75,000, including lost past and future royalties.

### AS FOR THE SECOND CAUSE OF ACTION –
Tortious Interference with Prospective Economic Advantage

32. Plaintiff realleges paragraphs 1-31 as if fully set forth herein.

33. Plaintiff had a reasonable expectancy of future economic benefits, including: (a) the continued monetization and automatic renewal under its existing CMG distribution Agreement;

(b) expanding exploitation of its rapidly growing music catalog through that agreement; and (c) improved revenue share and commercial leverage with CMG as a direct result of sustained, high-volume performance; This expectancy was grounded in the proven, exponential revenue growth YouTube itself had previously approved and facilitated.

34. Defendants intentionally, and by dishonest means (coercion, retroactive enforcement rationales, and concealment), interfered with these prospective relationships.

35. Defendants' primary motive was to eliminate a successful independent competitor at the behest of larger partners.

36. This interference directly destroyed SocialRyse's business and caused losses exceeding hundreds of millions of dollars in projected revenue (Exhibit D), amounting to damages well in excess of $75,000.

## AS FOR THE THIRD CAUSE OF ACTION
Unfair Competition and Deceptive Acts (N.Y. GBL §§ 349-350)

37. Plaintiff realleges paragraphs 1-36 as if fully set forth herein.

38. Defendants' conduct constitutes deceptive, consumer-oriented business practices. YouTube holds itself out as a neutral platform "giving everyone a voice," while upon information and belief, secretly colluding with major media companies to sabotage independent competitors like SocialRyse.

39. This practice harms the broader public of New York consumers and creators by reducing diversity of content, stifling innovation, and deceiving users about the platform's fairness.

40. Defendants' misrepresentations to SocialRyse (Exhibits G, H) regarding their non-involvement were specifically intended to conceal these deceptive practices.

41. As a direct result, SocialRyse has suffered injury. Plaintiff is entitled to treble damages, injunctive relief, and reasonable attorneys' fees under GBL § 349(h).

## AS FOR THE FOURTH CAUSE OF ACTION
### Fraudulent Concealment and Equitable Tolling

42. Plaintiff realleges paragraphs 1-41 as if fully set forth herein.

43. Defendants fraudulently concealed their direct role in the termination of Plaintiff's business by affirmatively representing to Plaintiff that independent third-party distributors alone had acted, and that YouTube itself "does not mediate" or control such actions (see Exhibit H), while simultaneously exercising backend enforcement control and pressure through those same distributors.

44. These misrepresentations and omissions were material, known by Defendants to be false when made, and made with the intent to induce SocialRyse's reliance and prevent the discovery of its claims.

45. Plaintiff reasonably and justifiably relied on Defendants' misrepresentations and denials and, as a result, could not and did not discover Defendants' direct role in orchestrating Plaintiff's business termination until substantially later, when Plaintiff first obtained previously concealed, non-public facts revealing Defendants' deliberate interference. Prior to that time, Plaintiff possessed no access to internal communications, enforcement directives, or objective evidence demonstrating that Defendants exercised centralized override authority over distributor Content ID systems, issued purge directives, or employed coercive measures to compel distributor compliance. Despite exercising reasonable diligence, this discovery occurred, including, without limitation, during the discovery process in the case between SocialRyse and CMG in relation to unremitted royalties, through communications with opposing counsel that revealed corroborating internal communications and patterns of coordinated distributor activity, exposing YouTube's concealed role. Instead, Plaintiff observed only unexplained distributor actions, inconsistent enforcement rationales relayed indirectly through distributors, rather than through any direct

notice from YouTube—all of which masked Defendants' concealed misconduct and affirmatively prevented timely discovery of their wrongful acts.

46. As a direct and proximate result of Defendants' fraudulent concealment and affirmative misrepresentations, Plaintiff's discovery of its claims was delayed. Accordingly, pursuant to CPLR § 203(g) and New York common law, including Simcuski v. Saeli, 44 N.Y.2d 442 (1978), the statute of limitations for all related causes of action is equitably tolled, and Defendants are estopped from asserting any statute-of-limitations defense.

AS FOR THE FIFTH CAUSE OF ACTION<br>Monopolization (Sherman Act § 2, 15 U.S.C. § 2)

47. Plaintiff realleges and incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48. The relevant product market is the market for automated online video monetization through proprietary rights-management and fingerprinting systems, including the licensing, detection, and revenue allocation of copyrighted musical works embedded within user-generated video content.

49. The relevant geographic market is the United States, as Defendants' automated Content ID enforcement, monetization controls, distributor access, and revenue allocation decisions are centrally administered within the U.S. and affect U.S. commerce.

50. The market is characterized by substantial barriers to entry, including powerful network effects, proprietary fingerprinting and reference-file infrastructure, exclusive access to monetization APIs, high switching costs for creators and advertisers, and the complete absence of any commercially viable substitute for large-scale automated video monetization outside of YouTube.

48. Defendants possess and maintain monopoly power in the relevant market. YouTube controls the overwhelming majority of online video distribution and monetization transactions in the United States, and no competing platform offers a comparable Content ID-style fingerprinting and automated revenue-allocation system at scale.

51. Defendants' monopoly is not the result of a superior product alone, but is reinforced by:

   a. Exclusive control over automated rights enforcement infrastructure;

   b. Closed-system monetization access;

   c. Distributor dependency on YouTube's CMS privileges.

   d. The inability of rights holders to monetize at scale without Defendants' participation.

52. Defendants' exclusionary conduct raised rivals' costs and entrenched dominant incumbents, protecting YouTube's revenue-sharing arrangements with large labels while foreclosing independent competition. By eliminating SocialRyse and similarly situated independent rights holders, Defendants reinforced their control over monetization flows and, upon information and belief, preserved preferential relationships with established industry partners.

53. Defendants willfully acquired and maintained their monopoly power through exclusionary conduct, including but not limited to:

   a. Targeted exclusion of independent rights holders, including Plaintiff, from automated monetization access through coercive distributor pressure;

   b. Retroactive application of newly asserted enforcement rationales, including allegations labeled "Circumventing Content ID," presented without prior notice, any published standards, or neutral enforcement criteria, to remove Plaintiff from competitive participation after Plaintiff had already achieved rapid market traction;

    c. Coercion of third-party distributors under threat of punitive CMS feature restrictions and claim suppression (Exhibit I);

    d. Secret purge directives and enforcement pressure compelling distributor compliance under threat of commercial retaliation (Exhibit I; Exhibit J);

    e. Invalidation of reference files and revenue-limiting tactics, designed to suppress Plaintiff's earnings and discourage continued monetization (Exhibit J);

    f. Upon information and belief, maintaining a de facto blacklist that resulted in cascading refusals and removals by multiple distributors after Plaintiff's forced CMG termination.

54. Internal communications evidence that Defendants exerted coercive leverage over CMG's Content ID operations. On January 13, 2021, YouTube employee Ian Connelly warned CMG that "the hammer falls on Create, not these folks," signaling punitive consequences for non-compliance (Exhibit I). Additional communications threatened CMS feature redactions and universal claim suppression unless CMG complied (Exhibit I).

55. As a direct and intended result of this coercion, CMG terminated monetization of Plaintiff's catalog in or about March 2021 (Exhibit J). Other distributors, including RouteNote, subsequently followed suit using the same "circumvention" rationale (Exhibit C).

56. Defendants' actions departed from any legitimate, neutral, or consistently applied enforcement standards. Plaintiff owned one hundred percent (100%) of the copyrighted sound recordings and musical compositions it monetized. Plaintiff's revenue was generated solely through YouTube's automated fingerprinting and allocation systems based exclusively on detected usage of Plaintiff's music (Exhibit M).

57. Defendants' actions were not competition on the merits, but instead constituted deliberate market foreclosure of a rapidly scaling independent rights holder in order to preserve incumbent dominance and prevent revenue dilution across competing claimants.

58. Defendants' exclusionary conduct harmed competition by:

- Eliminating independent rights holders from the monetization market.
- Concentrating revenue among dominant labels and platform partners;
- Suppressing alternative monetization models;
- Reducing price competition in content licensing.

59. Defendants' conduct also caused direct consumer harm, including reduced catalog diversity available to creators and viewers, diminished music discovery, suppression of independent artist exposure, and artificial concentration of earnings within dominant incumbents.

60. At the time of Defendants' interference, Plaintiff's revenues were accelerating at a rapidly compounding monthly rate as a direct result of its active promotional business model and expanding catalog distribution. But for Defendants' misconduct, Plaintiff would have continued to scale through the automatic renewal of its distribution agreement with CMG and expanding voluntary creator adoption.

61. Defendants' misconduct therefore severed Plaintiff from the sole economically viable monetization channel for its catalog, capable of generating in excess of hundreds of millions in monetization revenue over its natural commercial life, and terminated Plaintiff at its moment of maximum commercial velocity—destroying not only current income, but all future market participation, goodwill, and growth trajectory. Defendants' intentional interference supports recovery to the full destruction value of the business, including lost future profits, lost goodwill, and permanent loss of market access.

62. In addition to outright termination, Defendants employed revenue-limiting and suppression tactics—including 'invalid reference' flags, and monetization holds—which artificially reduced Plaintiff's earnings and further entrenched Defendants' exclusionary control.

63. In the alternative, Defendants engaged in attempted monopolization through:

- Specific intent to exclude independent competitors;
- Predatory exclusionary conduct;
- A dangerous probability of achieving monopoly power, which Defendants in fact already possess.

64. Defendants' anticompetitive conduct entitles Plaintiff to:

- Treble damages under 15 U.S.C. § 15;
- Disgorgement of unlawfully obtained revenues;
- Injunctive relief prohibiting further interference with lawful monetization and distributor relationships;
- Such additional equitable relief as the Court deems just and proper.

## AS FOR THE SIXTH CAUSE OF ACTION
### Declaratory and Injunctive Relief (28 U.S.C. §§ 2201–2202)

65. Plaintiff realleges paragraphs 1-65 as if fully set forth herein.

66. An actual and substantial controversy exists between the parties regarding the lawfulness of Defendants' conduct.

Plaintiff seeks a judicial declaration that:

a. Plaintiff operated within the monetization framework administered through YouTube's Content ID system via authorized distributors;

b. YouTube's retroactive and continued use of a "Circumventing Content ID" enforcement rationale to terminate and suppress plaintiff's previously approved, 100%-

  owned catalog was unlawful;

  c. YouTube tortiously interfered with SocialRyse's contract with CMG; and

  d. The ongoing application of "invalid reference," "potential policy violation," and similar revenue suppression flags to SocialRyse's catalog is unlawful.

67. Plaintiff seeks a permanent injunction requiring Defendants to:

  a. Immediately remove all "invalid reference," "circumventing,"" potential policy violation," and related suppression flags from SocialRyse's 100%-owned assets in YouTube's systems;

  b. Restore full Content ID monetization access for SocialRyse's catalog on a non-discriminatory basis, either directly or through CMG and/or any authorized distributor;

  c. Refrain from any further retaliation, blacklisting, or interference with SocialRyse's business; and

  d. Disclose all internal lists, flags, or instructions referencing SocialRyse, SRMD, or Ralph Cohen.

  e. Defendants shall be enjoined from directly or indirectly interfering with Plaintiff's lawful distribution relationships or monetization through Content ID, whether by coercion, retaliation, blacklisting, revenue suppression, or distributor pressure.

68. Even if reinstatement were theoretically ordered, Defendants' prior purge directives and coercive distributor communications have irreversibly chilled Plaintiff's distribution relationships. Distributors have been warned, explicitly and implicitly, that association with Plaintiff risks punitive consequences. As a result, Plaintiff cannot realistically re-enter the market absent substantial compensatory damages reflecting the permanent destruction of goodwill, distribution access, and future revenue.

## AS FOR THE SEVENTH CAUSE OF ACTION
Punitive Damages

70. Plaintiff realleges paragraphs 1-69 as if fully set forth herein.

71. Defendants' conduct, as alleged herein, was willful, malicious, wanton, and undertaken with reckless disregard for Plaintiff's rights. It involved a pattern of coercion, deceit, and anticompetitive behavior aimed at destroying a lawful business.

72. An award of punitive damages is necessary to punish Defendants and deter them and others from engaging in similar misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SocialRyse LLC respectfully requests that this Court enter judgment in its favor and against Defendants YouTube LLC and Google LLC, as follows:

A. Compensatory damages in an amount to be proven at trial, but not less than $75,000, for all lost revenue, profits, and other harms;

B. Treble damages pursuant to 15 U.S.C. § 15 and N.Y. GBL § 349(h);

C. Punitive and exemplary damages;

D. A declaratory judgment as set forth in Count VI;

E. A permanent injunction as set forth in Count VI;

F. Pre- and post-judgment interest at the maximum lawful rate;

G. Reasonable attorneys' fees and the costs and expenses of this action; and

H. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 7, 2025

Respectfully submitted,


_____s//\_\_\_---_____
COURTNEY K. DAVY, ESQ.
Attorney for Plaintiff
299 Broadway, Suite 800
New York, NY 10007
(516) 850-1800