# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SOCIALRYSE LLC<br>(d/b/a SocialRyse Music Disco),<br><br>        *Plaintiff,*<br><br>vs.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>        *Defendants*. | Case No. 1:25-cv-10337-LAK |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**TABLE OF CONTENTS**

I.   BACKGROUND ............................................................................................................... 2

   A.   Factual Background ..................................................................................................... 2

   B.   Procedural History ...................................................................................................... 5

II.   LEGAL STANDARD..................................................................................................... 6

III. ARGUMENT .................................................................................................................. 7

   A.   All of Plaintiff's Claims Are Untimely.......................................................................... 7

   B.   Plaintiff Fails To State a Claim Under New York State Law....................................... 13

       1.   Plaintiff Fails To State a Claim for Tortious Interference with Contract (Count One). ...................................................................................................... 13

       2.   Plaintiff Fails To State a Claim for Tortious Interference with Prospective Economic Advantage (Count Two)......................................................... 16

       3.   Plaintiff Fails To State a Claim for Deceptive Acts (Count Three)......................... 18

       4.   Plaintiff Fails To State a Claim for Unfair Competition (Count Three)................... 19

       5.   Plaintiff Fails To State a Claim for Fraudulent Concealment (Count Four)............. 20

   C.   Plaintiff Fails To State a Claim Under the Sherman Act (Count Five). ....................... 21

       1.   Plaintiff Fails To State a Claim Under Section 1 of the Sherman Act (Count Five)....................................................................................................... 22

       2.   Plaintiff Fails To State a Claim Under Section 2 of the Sherman Act (Count Five)....................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*57th St. Arts, LLC v. Calvary Baptist Church,* 52 A.D.3d 425 (N.Y. App. Div. 2008) ............... 16

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436 (S.D.N.Y. 2014)................... 19

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85 (2d Cir. 2023) ............................. 19

*Arbitron Co. v. Tropicana Prod. Sales, Inc.*, 1993 WL 138965 (S.D.N.Y. Apr. 28, 1993) ... 29, 30

*Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir. 1983)........................................................................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) ........................................................ 2, 6, 14

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*,
    459 U.S. 519, 103 S.Ct. 897 (1983) ........................................................................................ 23

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884 (1990)......................... 23

*Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084 (S.D.N.Y. 1988) .......................... 18

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162 (S.D.N.Y. 1995)...... 28

*Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569 (S.D.N.Y. 2011) ................... 30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ......................................... 7, 26

*Bongo Apparel, Inc. v. Iconix Brand Grp., Inc.*, 2008 WL 41341
    (N.Y. Sup. Ct. Jan. 2, 2008) .................................................................................................... 20

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690 (1977) ..................... 23

*Canpartners Invs. IV, LLC v. Alliance Gaming Corp.*, 981 F. Supp. 820 (S.D.N.Y. 1997)......... 21

*Cartiga, LLC v. Aquino*, 2025 WL 388804 (S.D.N.Y. Feb. 4, 2025).......................................... 18

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (N.Y. 2004)............................................................. 16, 17

*Casey's Distributing, Inc v. Nat'l Football League*, 2025 WL 1928544
    (S.D.N.Y. July 14, 2025)........................................................................................................... 25

*Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346 (S.D.N.Y. 2018) .............. 20, 24, 26, 27

*City of New York v. Exxon Mobil Corp.*, 86 Misc. 3d 679 (N.Y. Sup. Ct. 2025) ......................... 12

*Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126 (E.D.N.Y. 2010) .................................................. 29

*CoraMed USA, LLC v. Alexion Pharms., Inc.*, 695 F. Supp. 3d 251 (E.D.N.Y. 2023) .......... 17, 18

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co., Ltd.*,
  546 F. Supp. 3d 204 (W.D.N.Y. 2021) ................................................................ 15, 16

*Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174 (2d Cir. 1990) ...................... 28

*Denenberg v. Rosen*, 71 A.D.3d 187 (N.Y. App. Div. 2010) ......................................................... 19

*Dfinity Found. v. New York Times Co.*, 702 F. Supp. 3d 167 (S.D.N.Y. 2023),
  *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024) ........................................................ 6

*Doe v. NYS Off. of Children & Family Servs.*, 2021 WL 2826457 (N.D.N.Y. July 7, 2021) ........ 9

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014) .................... 7

*Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217 (S.D.N.Y. 2013) ........................... 12

*Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357 (N.D.N.Y. 2021) ................................... 17

*Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493 (S.D.N.Y. 2013) ........................................... 7

*Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496 (S.D.N.Y. 2001) ................... 30

*Frankel v. U.S. Healthcare, Inc.*, 2019 WL 4450640 (S.D.N.Y. Sept. 17, 2019) ....................... 15

*Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164 (S.D.N.Y. 2008) ............................... 17

*Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201 (2001)................................................... 8

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68 (2d Cir. 2013) ................................. 23

*Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016) ...................................................... 23

*Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417 (E.D.N.Y. 2019) .................... 16, 18

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869 (S.D.N.Y. 2016) ...... 12

*High Tides, LLC v. DeMichele*, 88 A.D.3d 954 (N.Y. App. Div. 2011) ....................................... 21

*In re Adderall XR Antitrust Litig.*, 754 F.3d 128 (2d Cir. 2014) ................................................. 22

*In re Ciprofloxacin Hydrocholoride Antitrust Litig.*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003) ...... 11

*Invamed, Inc. v. Barr Lab'ys, Inc.*, 22 F. Supp. 2d 210 (S.D.N.Y. 1998) ..................................... 30

*IS Co., LLC v. Olsen*, 227 N.Y.S.3d 44 (N.Y. App. Div. 2025) .................................................... 17

*Itellective, Inc. v. Mass. Mut. Life Ins. Co.*, 190 F. Supp. 2d 600 (S.D.N.Y. 2002) ..................... 23

*Kampuries v. Am. Honda Motor Co., Inc.*, 204 F. Supp. 3d 484 (E.D.N.Y. 2016) ....................... 21

*Kearse v. Kaplan, Inc.*, 692 F. Supp. 2d 398 (S.D.N.Y. 2010) ...................................................... 9

*Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105 (S.D.N.Y. 2011) ............................................ 11

*Korshin v. Benedictine Hosp.*, 34 F. Supp. 2d 133 (N.D.N.Y. 1999) ........................................... 24

*Linkable Networks, Inc. v. Mastercard Inc.*, 184 A.D.3d 418 (N.Y. App. Div. 2020) ................... 8

*Litovich v. Bank of Am. Corp.*, 2025 WL 2521039 (S.D.N.Y. Sept. 2, 2025) ............................... 9

*M.J. & K. Co. v. Matthew Bender & Co.*, 220 A.D.2d 488 (N.Y. App. Div. 1995) ...................... 17

*Malheur Forest Fairness Coalition v. Iron Triangle, LLC*, 164 F.4th 710 (9th Cir. 2026) ......... 29

*Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465 (S.D.N.Y. 2001) ........................................... 24

*Millar v. Ojima*, 354 F. Supp. 2d 220 (E.D.N.Y. 2005) ............................................................... 14

*MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, 2021 WL 1193947
    (E.D.N.Y. Mar. 29, 2021) ....................................................................................... 14, 15

*Moccio v. Cablevision Sys. Corp*, 208 F. Supp. 2d 361 (E.D.N.Y. 2002) .................................... 27

*Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80 (2d Cir. 1961) ........................................... 13

*N.Y. Tile Wholesale Corp. v. Thomas Fatato Realty Corp.*, 153 A.D.3d 1351
    (N.Y. App. Div. 2017) .................................................................................................. 12

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308 (1995) ........................................................... 19

*Norbrook Lab'ys Ltd. v. G.C. Hanford Mfg. Co.*, 297 F. Supp. 2d 463 (N.D.N.Y. 2003) ............. 8

*Omni Food Sales v. Boan*, 2007 WL 2435163 (S.D.N.Y. Aug. 24, 2007) .................................... 10

*Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541 (S.D.N.Y. 2007) ....... 15

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (N.Y. 1995) ............................................................................................ 18

*Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807 (2005) .......................................................... 8

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002) ........................................................ 8, 12

*Philadelphia Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332 (3d Cir. 2018) ........................ 25

*PhramcyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*,
   530 F. Supp. 3d 301 (S.D.N.Y. 2021) ..................................................................................... 23

*Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ....................................................... 11, 12

*Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406 (S.D.N.Y. 2011) ................................. 5

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117 (2d Cir. 2007) ............................ 29

*Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471 (S.D.N.Y. 2017) ....... 19

*Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318 (S.D.N.Y. 2017) ................... 15

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997) ............................. 28

*Red Mountain Medical Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159 (S.D.N.Y. 2021)............ 9, 10

*RMS Int'l Shipping GmbH v. Stemcor USA, Inc.*, 1991 WL 136035 (S.D.N.Y. July 18, 1991) .. 14

*Salerno v. Am. League of Pro. Baseball Clubs*, 429 F.2d 1003 (2d Cir. 1970)............................ 22

*Sewell v. Bernardin*, 795 F.3d 337 (2d Cir. 2015)........................................................................ 6

*Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462 (S.D.N.Y. 2016) ............................... 29, 30

*Solent Freight Servs., Ltd. Inc. v. Alberty*, 914 F. Supp. 2d 312 (E.D.N.Y. 2012)................. 24, 27

*Solow v. Stone*, 994 F. Supp. 173 (S.D.N.Y. 1998) ....................................................................... 9

*Stat. Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468 (S.D.N.Y. 2000) ........................... 11, 12

*Storms v. United States*, 2015 WL 1196592 (E.D.N.Y. Mar. 16, 2015)...................................... 26

*Sullivan v. Aircraft Servs. Grp., Inc.*, 2021 WL 11703008 (E.D.N.Y. Mar. 8, 2021) ................. 15

*Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257 (E.D.N.Y. 2016)...................... 14

*Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141 (N.Y. App. Div. 1995) .............................................. 19

*Tsatskin v. Kordonsky*, 189 A.D.3d 1296 (N.Y. App. Div. 2020) ......................................... 16, 17

*Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610 (S.D.N.Y. 2013) ........................... 21, 22

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, 516 F. Supp. 2d 270
    (S.D.N.Y. 2007) ................................................................................................... 25, 26, 27

*Whiteside v. Hover-Davis, Inc.*, 2020 WL 979785 (W.D.N.Y. Feb. 28, 2020) ........................... 27

*World Arrow Tourism Enters., Ltd. v. Trans World Airlines, Inc.*, 5
    82 F. Supp. 808 (S.D.N.Y. 1984)....................................................................................... 27

*World Wrestling Entertainment, Inc. v. Jakks Pacific Inc.*, 328 F. App'x 695 (2d Cir. 2009)..... 10

*Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372 (S.D.N.Y. 2007) ................. 24, 25, 27

*YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56 (E.D.N.Y. 2025)................................ 14

*Ying Li v. City of New York*, 246 F. Supp. 3d 578 (E.D.N.Y. 2017) ............................................... 9

*Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402 (E.D.N.Y. 2013) ...................................... 25

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 91 S.Ct. 795 (1971).......................... 8

*Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292 (E.D.N.Y. 2016),
    *aff'd*, 707 F. App'x 724 (2d Cir. 2017) ............................................................................. 26

**Statutes**

15 U.S.C.A. § 15b (West)............................................................................................................... 8

N.Y. Gen. Bus. Law § 340(5) ........................................................................................................ 8

New York General Business Law § 349........................................................................................ 20

New York General Business Law § 350........................................................................................ 20

**Other Authorities**

YouTube Help, *Content Manager Responsibilities and Feature Access,*
    https://support.google.com/youtube/answer/9142671?hl=en#zippy=%2Ccontent-id-eligible-
    content-policy%2Ccircumventing-systems-policy ...................................................................... 5

YouTube Help, *YouTube Channel Monetization Policies*,
    https://support.google.com/youtube/answer/1311392?hl=en#zippy=%2Cfollow-our-program-
    policies ..................................................................................................................................... 5

Google LLC ("Google") operates an online video platform, YouTube, and offers an automated content detection system on that platform called Content ID.  Among other things, Content ID enables copyright holders to get paid for use of their copyrighted materials in videos. Complaint, ECF No. 3 ("Compl.") ¶¶ 9–10, 54.  Content ID's monetization system plays an important role in YouTube's ecosystem:  it ensures that the right copyright holders are paid for use of their materials by automatically detecting copyrighted audio and allocating "proportional advertising and subscription revenue" to rights holders.  Compl. ¶¶ 9, 54.[1]

One way that Google preserves the health of YouTube's ecosystem is by flagging to distributors enforcement concerns about labels, artists, and other entities who misuse the platform. This case has been brought by a supposed label whom Google lawfully and permissibly flagged, SocialRyse LLC ("Plaintiff").  Plaintiff complains about the application of YouTube's enforcement policies against its catalog and behavior in early 2021.  Specifically, in February 2021, Google allegedly told one of Plaintiff's YouTube distributors, Create Music Group ("CMG"), that Plaintiff had violated an "enforcement rationale, 'Circumventing Content ID.'" Compl. ¶¶ 16–17.  Less than a month later, around March 1, 2021, CMG allegedly "terminated monetization" of Plaintiff's catalog, "citing YouTube's asserted 'circumvention' concerns and related compliance pressures" to Plaintiff.  Compl. ¶ 19.

Almost five years later, in December 2025, Plaintiff filed the instant complaint against Google and YouTube, LLC ("Defendants") asserting a number of New York state-law tort and Sherman Act claims arising out of Google's enforcement actions against Plaintiff in early 2021. The statute of limitations for all of Plaintiff's claims has long passed.  Plaintiff has not justified its

---

[1] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.

1

extended delay in bringing this case—as Plaintiff pleads in its own complaint, it has been on notice since at least March 2021 that CMG removed Plaintiff's catalog due to "concerns" raised by Google. Plaintiff's complaint should therefore be dismissed with prejudice in its entirety. Given this unjustified delay, there is no set of facts Plaintiff could allege—in this pleading or any amendment—to avoid the time-bar on its claims.

Plaintiff's claims should also be dismissed for failure to state a claim. Each of Plaintiff's claims recites legal elements of the asserted claims without offering factual allegations in support. But it is well-settled law that a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and cannot rest on "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). As to the facts Plaintiff does allege, even taking them as true and drawing inferences in Plaintiff's favor, Google's legitimate enforcement flags on Plaintiff's catalog cannot be shoehorned into either New York state law or Sherman Act claims.

Defendants respectfully request that the Court dismiss Plaintiff's complaint with prejudice.

## I.    BACKGROUND[2]

### A.    Factual Background

Google operates an online video platform, YouTube. Videos uploaded by users to YouTube sometimes contain copyrighted content (including copyrighted content that the users do not themselves own), so Google has created an automated content detection tool called Content ID. Compl. ¶¶ 9–10, 54. Among its capabilities, Content ID "automatically detects copyrighted audio in user videos." Compl. ¶ 9. If a copyright holder's audio is detected in a video, Content

---

[2] For purposes of the motion to dismiss, Defendants accept as true, as they must, all allegations in Plaintiff's complaint. Accordingly, any statements or arguments in the motion to dismiss should not be construed as agreement with the factual accuracy of Plaintiff's allegations.

ID can "allocate <u>proportional</u> advertising and subscription revenue" from that video to the rights holder(s).  Compl. ¶¶ 9, 54.  Because Content ID allocates revenue "proportionally," revenue generated by a video can be split across multiple system participants if multiple pieces of copyrighted content are embedded in one video.  *See* Compl. ¶ 54.

Media rights holders who monetize using the Content ID system need not have a "direct contract or Content ID relationship with" Google.  Compl. ¶ 16.  Instead, in order to monetize their copyrighted content on YouTube, rights holders may enter into contracts with "authorized distributors like AdRev and Create Music Group."  Compl. ¶¶ 9, 12.  Under those contracts, distributors facilitate underlying rights holders' participation in Content ID, and the distributors may receive a share of the revenue paid out by Content ID.  Compl. ¶¶ 12, 28.

Plaintiff is allegedly a rights holder that owns "an original music catalog" and seeks to make money from the Content ID system.  Compl. ¶ 8.  Like many others, Plaintiff never had a "direct contract or Content ID relationship with YouTube."  Compl. ¶ 16.  Instead, in August 2020, Plaintiff "entered a Distribution Agreement" with a YouTube-authorized distributor, Create Music Group, through which CMG would help monetize Plaintiff's catalog in Content ID in exchange for revenue share.  Compl. ¶ 12.

According to the Complaint, "on or about March 1, 2021," CMG terminated its agreement to monetize Plaintiff's catalog.  Compl. ¶ 19.  Plaintiff alleges that CMG explained its termination was a result of "YouTube's asserted 'circumvention' concerns and related compliance pressures."  Compl. ¶ 19.  In parallel, Plaintiff made "direct inquiries" to Google, beginning in February 2021.  Compl. ¶ 20.  Plaintiff alleges that, in February 2021, it was told by "YouTube's Rights Management team" that "revenue-sharing arrangements with channels were 'out of our scope' and 'YouTube does not mediate on this anymore,'" Compl. ¶ 20, and that, in July 2021, it was told by

3

"YouTube Partner Support" that "YouTube is not able to suspend your assets," "we did not suspend your music, and it was your label/distributor who decided to do so," Compl. ¶ 21.

Plaintiff claims the statements Google made to Plaintiff in February and July 2021 prevented Plaintiff from learning that CMG's termination arose from alleged directives by Google to CMG to remove "certain labels and artists" (though Plaintiff does not actually allege whether it was among that list of "certain labels and artists"). Compl. ¶ 17. But Plaintiff's claim is contradicted by its own allegation that CMG had already invoked Google's enforcement concerns as the reason for termination on or about March 1, 2021. Compl. ¶ 19. Plaintiff does not allege any additional, new conduct by Defendants following Google's alleged communications in July 2021. *See* Compl. ¶ 25.

Plaintiff alleges that any cited "enforcement rationale" Google communicated to distributors in early 2021 was pretextual, and Plaintiff was entitled to continue making revenue from YouTube, because Plaintiff had "undisputed ownership of one hundred percent (100%) of the copyrights in the original sound recordings and musical compositions it distributed" via Content ID. Compl. ¶¶ 16, 76. This assumes, without support, that enforcing whether a rights holder validly owns the copyrights it claims is Content ID's sole purpose. Although Plaintiff repeatedly recognizes that Content ID also ensures that rights holders can be allocated revenue "proportional" to the share they are owed, Compl. ¶¶ 9, 52, 54, 62, it fails to acknowledge any possible enforcement rationales that are necessary to execute that essential function, or any other function, of the Content ID system.

For example, one publicly available enforcement policy specifically prohibits the use of Content ID "to improperly monetize content that is ineligible for monetization on YouTube. This includes content that violates YouTube's community and brand safety guidelines, as well as

content prohibited by any applicable laws and regulations."[3]  As an illustrative example, Google might flag a bad actor who systematically embeds its own 15-second "original music" into reused content (such as "collections of songs from different artists") in order to get paid for uploading reused content that would otherwise be ineligible for monetization under YouTube's policies.[4] Such conduct damages YouTube's ecosystem because it diverts revenue away from the original creator of the reused content (in the example, the artists whose songs are reused), and in turn reduces the variety and quality of content creators make available to YouTube viewers.  Though Plaintiff claims Google's asserted enforcement flag rationales were "pretext," Compl. ¶ 16, it has not alleged facts to show that those rationales were illegitimate, either in their nature or as applied to Plaintiff's catalog.

## B.    Procedural History

On December 14, 2025, almost 5 years after the events in the complaint, Plaintiff filed the present lawsuit.  ECF No. 1.  Plaintiff alleges that Defendants tortiously interfered with Plaintiff's contract with CMG (Count One), Compl. ¶¶ 27–32, and with Plaintiff's prospective economic advantage in its relationship with CMG (Count Two), Compl. ¶¶ 33–37.  Plaintiff also alleges that Defendants' acts constituted "unfair competition and deceptive acts" in violation of New York General Business Law sections 349–350 (Count Three).  Compl. ¶¶ 38–43.  And Plaintiff alleges that Defendants violated Sections 1 and 2 of the Sherman Act by engaging in a "conspiracy and

---

[3]    YouTube    Help,    *Content    Manager    Responsibilities    and    Feature    Access,* https://support.google.com/youtube/answer/9142671?hl=en#zippy=%2Ccontent-id-eligible-content-policy%2Ccircumventing-systems-policy.  "It is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss."  *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411–12 (S.D.N.Y. 2011).

[4]    YouTube    Help,    *YouTube    Channel    Monetization    Policies*, https://support.google.com/youtube/answer/1311392?hl=en#zippy=%2Cfollow-our-program-policies.

5

concerted action" and monopolizing a market in "automated, large-scale audiovisual content monetization through proprietary fingerprint-based rights-management systems" (Count Five). Compl. ¶¶ 50–85.  Plaintiff also alleges that "Defendants fraudulently concealed their direct role in the termination of Plaintiff's business" (Count Four).  Compl. ¶¶ 44–49.

Plaintiff's complaint references a number of exhibits that purportedly accompany its allegations.  Even after the Court's express direction at the scheduling conference held on January 28, 2026, as of the filing of this memorandum, Plaintiff has not served Defendants with these exhibits or filed them on the docket.  While no exhibits could save Plaintiff's complaint, Defendants reserve the right to modify their arguments in support of dismissal as necessary, if Plaintiff files an amended complaint with exhibits.

## II.    LEGAL STANDARD

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar," such as lack of timeliness, "as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."  *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015).  Though courts "accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor," *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 173 (S.D.N.Y. 2023), *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024), they do not credit mere "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949).  To survive a motion to dismiss, a plaintiff is still required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).  In addition, "although factual allegations of a complaint are normally accepted as true on a motion to dismiss,

that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–152 (2d Cir. 2014).

### III.    ARGUMENT

#### A.    All of Plaintiff's Claims Are Untimely.

All of Plaintiff's claims are time-barred on their face.[5]  In an effort to toll the statute of limitations, Plaintiff alleges that the facts giving rise to its claims were fraudulently concealed by Defendants.  But this defense fails:  Plaintiff was on notice of Google's alleged enforcement communications with CMG by no later than March 1, 2021 (and presumably earlier); Plaintiff demonstrated knowledge of those communications by contacting Google directly as early as February 2021; and the statements Plaintiff alleges Google made in response did not conceal the existence of Plaintiff's claims.

For each of Plaintiff's state-law tort claims,[6] the statute of limitations is three years and runs from the date of Plaintiff's injury.  N.Y. C.P.L.R. § 214 (McKinney 2026); *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 509 (S.D.N.Y. 2013) (interference with contractual relations); *Linkable Networks, Inc. v. Mastercard Inc.*, 184 A.D.3d 418, 419 (N.Y. App. Div. 2020) (interference with prospective economic advantage); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (N.Y. 2001) (deceptive acts); *Norbrook Lab'ys Ltd. v. G.C. Hanford Mfg. Co.*,

---

[5] It is not clear whether Plaintiff's complaint alleges fraudulent concealment for tolling purposes and/or alleges a standalone fraudulent concealment tort under New York law.  As explained below, under either interpretation the allegations should be dismissed.

[6] These include: tortious interference with a contract (Count 1); tortious interference with prospective economic advantage (Count 2); "unfair competition and deceptive acts" under New York General Business Law §§ 349–350 (Count 3), and "fraudulent concealment and equitable tolling" (Count 4).

297 F. Supp. 2d 463, 491 (N.D.N.Y. 2003) (unfair competition sounding in injury to property).[7]

The statute of limitations for Plaintiff's Sherman Act claims is four years, and runs from the date

the defendant commits an act that causes Plaintiff's injury.  15 U.S.C.A. § 15b (West); *Zenith*

*Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806 (1971).

According to Plaintiff's allegations, Google's acts causing injury and the injury giving rise

to Plaintiff's claims all occurred, at the latest, by March 2021:  Plaintiff alleges that it was injured

when Google purportedly caused CMG to terminate its contract with Plaintiff "on or about March

1, 2021."  Compl. ¶¶ 19, 20, 25.[8]  Almost five years passed between March 2021 and Plaintiff's

filing of this case, so none of Plaintiff's claims are timely.

Fraudulent concealment does not save Plaintiffs' claims.  Compl. ¶¶ 45–49.[9]  For both New

York state law and Sherman Act claims, fraudulent concealment tolls a plaintiff's claims only if

the plaintiff establishes "(1) that the defendant concealed from him the existence of his cause of

action, (2) that he remained in ignorance of that cause of action until some point within" the statute

of limitations, "and (3) that his continuing ignorance was not attributable to lack of diligence on

---

[7] To the extent Plaintiff is seeking to allege "unfair competition" pursuant to New York's state-law antitrust statute, the Donnelly Act, the statute of limitations is four years.  N.Y. Gen. Bus. Law § 340(5).

[8] Plaintiff's complaint alleges that distributors other than CMG also terminated their contracts with Plaintiff due to communications from Google in February and April 2021.  Compl. ¶¶ 17-19, 74-75.

[9] Plaintiff also invokes, in the title of its fourth cause of action, the doctrine of equitable tolling. Even if Plaintiff were attempting to plead equitable tolling as distinct from fraudulent concealment, that would fail because, for the reasons discussed below, Plaintiff cannot allege "(1) that plaintiff has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005).  Plaintiff has pleaded neither diligence nor any extraordinary circumstance preventing it from filing suit in a timely fashion.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (doctrine is applicable only to "a situation where a plaintiff "could show that it would have been <u>impossible</u> for a reasonably prudent person to learn" about his or her cause of action").

his part." *Litovich v. Bank of Am. Corp.*, 2025 WL 2521039, at \*17 (S.D.N.Y. Sept. 2, 2025) (noting that the statute of limitations can be equitably tolled only in "rare and exceptional circumstances such as when the plaintiff can demonstrate fraudulent concealment"); *Kearse v. Kaplan, Inc.*, 692 F. Supp. 2d 398, 401 (S.D.N.Y. 2010) ("plaintiff does not get the benefit of a fraudulent concealment toll absent these particularized allegations"); *Red Mountain Medical Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 179 (S.D.N.Y. 2021) (for New York State law claims, similarly requiring that "the defendant conceals from the plaintiff the fact that he has a cause of action"). Fraudulent concealment must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Solow v. Stone*, 994 F. Supp. 173, 182 (S.D.N.Y. 1998).

Plaintiff has not—and cannot—allege facts sufficient to invoke the fraudulent concealment doctrine: the Complaint makes clear that Plaintiff knew or should have known about the existence of its claims in early 2021, and there was no "concealment" of facts relevant to Plaintiff's claim. Accordingly, amendment would be futile, and Plaintiff's claims should be dismissed with prejudice. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 646 (E.D.N.Y. 2017) ("An amendment to a pleading is considered futile if the claim is time-barred due to the expiration of the applicable statute of limitations period."); *Doe v. NYS Off. of Children & Family Servs.*, 2021 WL 2826457, at \*14 (N.D.N.Y. July 7, 2021) (dismissing claims with prejudice where they were time-barred "and there is no reason to believe that better pleading would cure this defect").

*First*, Plaintiff's allegations establish that it knew or should have known about the existence of its causes of action by at least March 2021. The core allegation supporting Plaintiff's causes of action is that Google pressured CMG to end its relationship with Plaintiff. *E.g.*, Compl. ¶¶ 30, 34, 40. According to Plaintiff, CMG explicitly told Plaintiff that fact around March 1, 2021, when CMG terminated its contract with Plaintiff citing "<u>YouTube's</u> asserted 'circumvention' concerns

9

and related compliance pressures."  Compl. ¶ 19.  Plaintiff further alleges that other distributors, too, invoked "the same 'circumvention' rationale."  *Id.*  Plaintiff even demonstrated its knowledge by reaching out directly to Google as early as February 2021 to discuss Google's application of enforcement flags regarding Plaintiff.  Compl. ¶ 20.  Thus, there can be no doubt Plaintiff was on notice of the existence of its claims.  No set of amended allegations could change that fact.

Courts have consistently declined to toll claims on the basis of fraudulent concealment where the plaintiff was explicitly put on notice of its potential claim when it was injured.  In *World Wrestling Entertainment, Inc. v. Jakks Pacific Inc.*, 328 F. App'x 695 (2d Cir. 2009), tolling did not apply where the "joint nature" of the defendants' coordination "was open and notorious," *id.* at 698.  Similarly, in *Red Mountain*, tolling did not apply where the plaintiff had been "aware of the tortious interference" with its potential investment earlier because it had "discovered that" the defendant "had been working for the Competitors."  563 F. Supp. 3d at 179.  And in *Omni Food Sales v. Boan*, 2007 WL 2435163 (S.D.N.Y. Aug. 24, 2007), fraudulent concealment did not save an interference with contract claim where the plaintiff "had knowledge much earlier that" the defendant "was 'interfering' with the Omni/Cargill contract," as the plaintiff "was surely on notice of interference when Cargill terminated the contract and hired defendant," *id.* at *7.

Plaintiff claims that it "lacked any objective facts establishing YouTube's direct orchestration of the terminations" for some unexplained period of time, Compl. ¶ 22, but Plaintiff's desire for additional facts to corroborate its claims before bringing suit is not enough to justify tolling.  *Stat. Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 481–83 (S.D.N.Y. 2000) (citing cases stating that the desire to gather "evidence" or "all the facts pertinent to their claims" is not sufficient to toll the statute of limitations under federal or New York state fraudulent concealment law).  "The key inquiry is not whether the plaintiff had all the information available to him, but

whether plaintiff knew enough to sue." *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 117 (S.D.N.Y. 2011) (rejecting fraudulent concealment where plaintiff had "harbored suspicions" since much earlier); *In re Ciprofloxacin Hydrocholoride Antitrust Litig.*, 261 F. Supp. 2d 188, 224–25 (E.D.N.Y. 2003) ("The critical determinant is when a significant fact emerges, not when plaintiffs realize the specific details of their alleged claims."). Under any amended pleading, Plaintiff "knew enough to sue" by at least March 2021, even if it did not have all of the "objective" information, Compl. ¶ 22.

*Second*, Plaintiff's allegations do not—and cannot—establish that Defendants concealed the existence of Plaintiff's cause of action. Plaintiff has not pleaded that Defendants "took tangible steps" "to conceal the nature of their activities toward him." *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1158 (2d Cir. 1995). Plaintiff points only to alleged statements by Google in 2021 that it "does not mediate" on distributors' relationships with rights holders and that it "did not suspend your music, and it was your label/distributor who decided to do so." Compl. ¶¶ 20–21. But as Plaintiff also acknowledges, those statements were responses to its direct inquiries after CMG told Plaintiff that Google's concerns gave rise to its termination. At most, the statements accurately represented that Google could not and did not unilaterally terminate Plaintiff's relationship with a third-party distributor.

That Google did not also explicitly admit to what Plaintiff already believed to be purported wrongdoing—*i.e.*, that Google had contacted Plaintiff's distributors about enforcement concerns about Plaintiff—is not enough to constitute affirmative concealment. "Mere denials of wrongdoing will not of themselves toll the statute of limitations." *Stat. Phone Philly*, 116 F. Supp. 2d at 483 ("Taking plaintiff's theory to its logical extreme, so long as a defendant denies wrongdoing or characterizes the available evidence in its favor, the statute of limitations cannot

11

begin to run. This argument is plainly without merit.").

Moreover, the alleged statements did not preclude Plaintiff's "possible discovery of the harms" that it suffered. *Pinaud*, 52 F.3d at 1157. At best, "although some of the facts putatively concealed by the defendants might have strengthened the plaintiff's case by corroborating" its story, "the absence of those facts did not sufficiently justify the plaintiff in not pursuing" its "cause of action as to merit" tolling. *Pearl v. City of Long Beach*, 296 F.3d 76, 84–85 (2d Cir. 2002). Plaintiff still had been told by its own distributor that Google had communicated "concerns" about Plaintiff to CMG, and those concerns were cited by CMG (and seemingly other distributors) in terminating Plaintiff's monetization.[10]

Plaintiff's complaint should also be dismissed for failure to plead fraudulent concealment with particularity. Plaintiff's allegations omit a critical component of a fraudulent concealment claim—*i.e.*, when, according to Plaintiff, it was actually capable of knowing the existence of its claim. Plaintiff alleges only that it could not have discovered its claims until "litigation involving Create Music Group, among other things," Compl. ¶¶ 23, 49, but does not actually allege when that litigation happened, how Plaintiff "discovered" its claims, or when that "discovery" occurred. Without a date for Plaintiff's purported "discovery" of its claims, neither Defendants nor this Court

---

[10] Plaintiff also cannot plead around the statute-of-limitations bar by invoking the "continuing tort" doctrine "under New York law." Compl. ¶ 25. None of Plaintiff's state-law causes of actions are ones that can support a theory of continuing tort based on the continued effects of prior acts. *N.Y. Tile Wholesale Corp. v. Thomas Fatato Realty Corp.*, 153 A.D.3d 1351, 1354 (N.Y. App. Div. 2017) ("tortious interference with contract is not a continuing tort"); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 910 (S.D.N.Y. 2016) ("A tortious interference with prospective economic advantage claim begins to run when the defendant performs the action (or inaction) that constitutes the alleged interference. It does not commence anew each time the plaintiff is unable to enter into a contract."); *City of New York v. Exxon Mobil Corp.*, 86 Misc. 3d 679, 705 (N.Y. Sup. Ct. 2025) (for deceptive acts, the "continuing violation doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct"); *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 227 (S.D.N.Y. 2013) ("unfair competition is not a continuing tort").

have any way to assess when Plaintiff argues the statute of limitations actually began to run or, most importantly, whether Plaintiff's claims have been brought within the proper time window. Accordingly, Plaintiff's claims should be dismissed. *Armstrong v. McAlpin*, 699 F.2d 79, 88–89 (2d Cir. 1983); *see also Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 88 (2d Cir. 1961) (a plaintiff must make "distinct averments as to <u>the time when the fraud, mistake, concealment, or misrepresentation was discovered</u>, and what the discovery is"). For the reasons explained above, however, dismissal should also be with prejudice because, even were Plaintiff to plead a specific date that it claims it discovered its claims, that would not suffice to plead tolling based on fraudulent concealment given that Plaintiff was on notice of its claims by no later than March 2021.

### B.    Plaintiff Fails To State a Claim Under New York State Law.

Even were they not time-barred, Plaintiff's state-law claims should be dismissed for failure to state a claim. Plaintiff alleges a bevy of business torts under New York state law, arguing that Defendants tortiously interfered with Plaintiff's contract with CMG (Count 1), that Defendants tortiously interfered with Plaintiff's prospective economic advantage in its relationship with CMG (Count 2), that Defendants engaged in "unfair competition and deceptive acts" in violation of New York General Business Law §§ 349–350 (Count 3), and that Defendants engaged in fraudulent concealment (Count 4). Plaintiff has not pleaded the requisite elements for any of these claims. For each of these claims, simply parroting the legal elements is not enough. Plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. It has not.

### 1.    Plaintiff Fails To State a Claim for Tortious Interference with Contract (Count One).

To allege a claim for tortious interference with contract, Plaintiff must plead "(1) the

existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) the actual breach of the contract; and (5) damages." *YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 85 (E.D.N.Y. 2025).  Plaintiff's claim fails for two reasons: Plaintiff has not alleged that there was any breach of contract, and Plaintiff has not alleged facts showing that Defendants acted with the requisite intent to cause breach of CMG's contract with Plaintiff.

*First*, Plaintiff has not alleged that Defendants procured a breach of contract because it has not alleged particulars of Plaintiff's contract with CMG showing that CMG's March 2021 termination of monetization was a breach.  "As a rule, conclusory allegations of interference with an unspecified contract are insufficient to plead tortious interference."  *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016).  "A claim for intentional interference with contract" must sufficiently plead certain "details regarding the formation of the contract, the date it took place, and the contract's major terms."  *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, 2021 WL 1193947, at \*12–\*13 (E.D.N.Y. Mar. 29, 2021).  Importantly, the plaintiff is required to "identify a specific contractual term that was breached," *Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005), and allege "whether and how the contract was breached," *RMS Int'l Shipping GmbH v. Stemcor USA, Inc.*, 1991 WL 136035, at \*4 (S.D.N.Y. July 18, 1991).

Plaintiff claims that Plaintiff's contract with its distributor, CMG, was breached when "CMG terminated monetization of SocialRyse's catalog on or about March 1, 2021" "despite no contractual breach by SocialRyse."  Compl. ¶¶ 19, 30.  But Plaintiff's complaint offers no factual allegation explaining why CMG's termination of monetization constituted a breach, much less

14

identifying a specific contractual term that was purportedly breached by termination.  Numerous courts have dismissed tortious interference with contract claims in similar circumstances.  *E.g.*, *Sullivan v. Aircraft Servs. Grp., Inc.*, 2021 WL 11703008, at *6 (E.D.N.Y. Mar. 8, 2021); *Frankel v. U.S. Healthcare, Inc.*, 2019 WL 4450640, at *6 (S.D.N.Y. Sept. 17, 2019); *MMS*, 2021 WL 1193947, at *12–*13; *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007) (dismissing claims that "leave open the possibility that" the third party "lawfully terminated the contract or that the contract was terminable at will").

*Second*, Plaintiff has not sufficiently alleged that Defendants acted with the requisite intent to support a tortious interference with contract claim.  Plaintiff must allege that the defendant "specifically intended to interfere with the relevant contract," such that "an interference that is merely an intrusion that is negligent or incident to some other lawful purpose is not enough." *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co., Ltd.*, 546 F. Supp. 3d 204, 212 (W.D.N.Y. 2021); *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327–28 (S.D.N.Y. 2017) ("A plaintiff must allege facts showing that the defendant's <u>objective</u> was to procure such a breach." (emphasis in original)).

Plaintiff's complaint makes only one conclusory allegation as to Defendants' intent—that Google "intentionally and without justification procured CMG's breach of this Agreement." Compl. ¶ 30.  That single, bare allegation that Google acted "intentionally" does not even allege that Google had the <u>specific</u> intent to interfere with CMG's contract with Plaintiff, rather than the interference being "negligent or incidental" to Google's lawful purposes.  Even had Plaintiff correctly restated the intent requirement, a barebones recitation of the legal standard for intent without accompanying factual allegations is still insufficient to state a claim.  *Corning*, 546 F. Supp. 3d at 212, 214 ("A plaintiff must allege facts showing that the defendant's objective was to

15

procure such a breach."); *57th St. Arts, LLC v. Calvary Baptist Church,* 52 A.D.3d 425, 426 (N.Y. App. Div. 2008) ("Conclusory assertions of wrongful, intentional, malicious or improper actions" "are inadequate to spell out a claim here for tortious interference with contract.").

### 2. Plaintiff Fails To State a Claim for Tortious Interference with Prospective Economic Advantage (Count Two).

"To establish a claim of tortious interference with prospective economic advantage, a plaintiff must demonstrate that the defendant's interference with its prospective business relations was accomplished by wrongful means or that the defendant acted for the sole purpose of harming the plaintiff." *Tsatskin v. Kordonsky*, 189 A.D.3d 1296, 1298 (N.Y. App. Div. 2020). Here, Plaintiff has alleged neither wrongful means nor the intent necessary for its claim.

*First*, Plaintiff has not pleaded that Defendants interfered with Plaintiff via wrongful means. To meet this standard, a "plaintiff must show more culpable conduct" than the kind of conduct necessary to show interference with breach of an existing contract. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (N.Y. 2004). Accordingly, "as a general rule, such wrongful conduct must amount to a crime or an independent tort, and may consist of physical violence, fraud or misrepresentation, civil suits, and criminal prosecutions." *Tsatskin*, 189 A.D.3d at 1298. Economic pressure should not be a basis for finding wrongful means unless it is "extreme and unfair." *Carvel*, 3 N.Y.3d at 192. Wrongful means "does not include simple persuasion alone." *Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 426 (E.D.N.Y. 2019).

Plaintiff has not adequately alleged that Defendants engaged in any independent torts or crimes that fulfill this requirement. *IS Co., LLC v. Olsen*, 227 N.Y.S.3d 44, 46 (N.Y. App. Div. 2025) (insufficiently pleaded causes of action "cannot serve as the factual predicate for the wrongful means"). Nor has Plaintiff alleged that Defendants interfered with any of Plaintiff's prospective business relations through physical violence, fraud, misrepresentation, civil suits,

16

criminal prosecutions, or extreme and unfair economic pressure.  Instead, Plaintiff alleges that Google interfered with its prospective relationships through "dishonest means (coercion, retroactive enforcement rationales, and concealment)," Compl. ¶ 35, and that Google "exerted coercive pressure" on CMG by warning that CMG's YouTube functionality could be impacted, Compl. ¶¶ 17–18.  Even taken as true, these vague allegations do not rise to the level of wrongful means.  *Carvel Corp.*, 3 N.Y.3d at 192 (no wrongful means where defendant's business activities "do not amount to the sort of extreme and unfair economic pressure that might be wrongful"); *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 172 (S.D.N.Y. 2008) (collecting cases finding no wrongful means based on economic pressure).

*Second,* Plaintiff fails to allege that Defendants "acted for the sole purpose of harming" Plaintiff.  *Tsatskin*, 189 A.D.3d at 1298.  To fulfill this element, Plaintiff must allege that "the motive for the interference" was "solely malicious." *M.J. & K. Co. v. Matthew Bender & Co.*, 220 A.D.2d 488, 490 (N.Y. App. Div. 1995); *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 372–73 (N.D.N.Y. 2021).  Plaintiff must "differentiate" a defendant's "economic self-interest" from malicious motive, because actions "motivated by economic self-interest" "cannot be characterized as solely malicious." *CoraMed USA, LLC v. Alexion Pharms., Inc.*, 695 F. Supp. 3d 251, 270 (E.D.N.Y. 2023).

Plaintiff fails to meet this standard.  While Plaintiff asserts that Defendants' "primary motive was to eliminate a successful independent competitor at the behest of larger partners," Compl. ¶ 36, Plaintiff does not allege any specific facts to support this allegation, much less facts to suggest that Google's actions were not legitimate enforcement or that Google's actions were taken to harm Plaintiff and not to serve Defendants' interests.  For example, Plaintiff's complaint neither acknowledges that Google can have legitimate enforcement rationales that are necessary

17

for Content ID to allocate revenue to copyright holders "proportional" to their rightful share nor alleges facts suggesting that Google's reasons for flagging Plaintiff's catalog were illegitimate. *Supra* at pp. 4–5. Its claim should therefore be dismissed. *CoraMed*, 695 F. Supp. 3d at 270; *Godinger*, 433 F. Supp. 3d at 427 (dismissing claim where plaintiffs alleged that defendant acted "with the intent to interfere" and "to squelch competition from Plaintiffs," but "Plaintiffs make no plausible allegation" that defendant "acted for any reason other than his earnest, subjectively held belief that plaintiffs were, in fact, infringing his patents"); *Cartiga, LLC v. Aquino*, 2025 WL 388804, at *10–11 (S.D.N.Y. Feb. 4, 2025) (collecting cases dismissing claims that failed "to meet the demanding standard" that defendant "acted with the sole purpose of harming" plaintiff rather than in "its own economic interest").

### 3. Plaintiff Fails To State a Claim for Deceptive Acts (Count Three).

New York General Business Law § 349 makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Importantly, "section 349 is directed at wrongs against the consuming public," so plaintiffs are required to "charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–25 (N.Y. 1995). In other words, "the gravamen of the complaint must be consumer injury or harm to the public interest." *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 & n.6 (S.D.N.Y. 1988). "Defendant's acts or practices must have a broad impact on consumers at large; private contract disputes unique to the parties would not fall within the ambit of the statute." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995).

Plaintiff has failed to state a deceptive acts claim because Plaintiff is fundamentally challenging the application of Google's policies to Plaintiff individually, Compl. ¶¶ 40, 42, not

18

any conduct directed at the public.  Plaintiff has not alleged that Content ID policies are unfairly applied against any entity other than Plaintiff.[11]  Such allegations raising "essentially a private dispute among the parties," "rather than conduct affecting the consuming public at large," should be dismissed.  *Denenberg v. Rosen*, 71 A.D.3d 187, 195 (N.Y. App. Div. 2010) (dismissing claim where "it was not the form of the" plan "in general that ran afoul of IRS regulations, but rather the operation of plaintiff's particular plan"); *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 145 (N.Y. App. Div. 1995) (section 349 "has generally been construed so as to be inapplicable to private contract disputes of this kind," as "the deceptive act or practice may not be limited to just the parties"); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 321 (N.Y. 1995) (dismissing complaint where the alleged conduct was a private dispute, "not conduct which affects the consuming public at large").

### 4. Plaintiff Fails To State a Claim for Unfair Competition (Count Three).

Plaintiff claims, in the heading of its third cause of action, to bring a claim for "Unfair Competition" under New York General Business Law §§ 349–350.  The statutes Plaintiff invokes, however, are not unfair competition statutes.[12]  Even assuming Plaintiff is seeking to allege a New

---

[11] It is also questionable that Plaintiff has even alleged effects on <u>consumers</u>, as opposed to non-consumer entities like "creators" or "independent rights holders."  Compl. ¶ 41.  New York's deceptive acts claim protects only consumers, not other groups like physicians who submit insurance claims, *Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476–77 (S.D.N.Y. 2017), or businesses in the film distribution industry, *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 455 (S.D.N.Y. 2014), *abrogated on other grounds by Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85 (2d Cir. 2023).

Even assuming that Plaintiff is alleging that parties like Plaintiff should be considered "consumers," Plaintiff's claim fails for the reasons explained above.

[12] As explained above, Plaintiffs' Section 349 deceptive acts claim should be dismissed.  Section 350 is a false advertising statute; Plaintiff does not allege any facts to support a false advertising claim or assert that it is bringing a false advertising claim.

19

York state law claim for unfair competition, that claim should be dismissed.  New York law recognizes seven bases for an unfair competition claim: "(1) monopoly; (2) restraint of trade; (3) trade secrets; (4) trademark or trade name infringement; (5) palming off; (6) misappropriation; and (7) false labeling or advertising." *Bongo Apparel, Inc. v. Iconix Brand Grp., Inc.*, 2008 WL 41341, at *13 n.2 (N.Y. Sup. Ct. Jan. 2, 2008).  Plaintiff's complaint does not identify which theory of unfair competition it is pursuing.  At best, extrapolating from Plaintiff's other allegations to assume Plaintiff seeks to allege a restraint of trade or monopoly theory, and assuming Plaintiff's theories could even be characterized as an unfair competition claim, that claim would still fail for the same reasons as its federal antitrust claims do.  *Infra* at pp. 22–30*; see Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 362–63 (S.D.N.Y. 2018) (listing authority concluding that New York's antitrust statute, the Donnelly Act, "is generally coextensive with the Sherman Act unless state policy, differing language, or legislative history suggests otherwise.").

### 5.  Plaintiff Fails To State a Claim for Fraudulent Concealment (Count Four).

Even assuming Plaintiff is seeking to bring a standalone claim for fraudulent concealment based on Google's statements to Plaintiff in 2021 (rather than alleging fraudulent concealment solely for tolling purposes), that claim should be dismissed.  "A cause of action to recover damages for fraudulent concealment requires, in addition to allegations of scienter, reliance, and damages, an allegation that the defendant had a duty to disclose material information and that it failed to do so." *High Tides, LLC v. DeMichele*, 88 A.D.3d 954, 957 (N.Y. App. Div. 2011).  A fraudulent concealment claim "must be pled with particularity." *Kampuries v. Am. Honda Motor Co., Inc.*, 204 F. Supp. 3d 484, 493 (E.D.N.Y. 2016); *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 621 (S.D.N.Y. 2013).

Plaintiff has not sufficiently alleged that Defendants owed Plaintiff any duty to disclose.

There is no allegation that Plaintiff and Defendants have "a confidential, fiduciary, or other special relationship." *Canpartners Invs. IV, LLC v. Alliance Gaming Corp.*, 981 F. Supp. 820, 826 (S.D.N.Y. 1997) ("regular business relations" "do not rise to the level of a special relationship without more"). Indeed, Plaintiff and Defendants had no direct relationship at all. Compl. ¶ 16. To the extent Plaintiff argues that Defendants nonetheless had a duty to disclose because they possessed "superior knowledge" to Plaintiff, that argument, too, fails because Plaintiff has not sufficiently alleged either that Defendants' knowledge was "not readily available" to Plaintiff or that Defendants knew that Plaintiff would act "on the basis of mistaken knowledge." *Canpartners*, 981 F. Supp. at 826. As discussed, Plaintiff already knew the relevant facts because Plaintiff knew from CMG and other distributors that Google had conveyed "concerns" about Plaintiff's catalog. *Supra* at pp. 7–13.

Plaintiff also has not alleged "the requisite damages" to support a fraudulent concealment claim. *Warren*, 952 F. Supp. 2d at 623. Plaintiff does not allege that Google's statements to Plaintiff caused any independent damages to Plaintiff, only that Google's statements caused "Plaintiff's discovery of its claims" to be "delayed." Compl. ¶ 49. Plaintiff's claims for pecuniary damages relate to CMG terminating its contract with Plaintiff, which occurred independent of any representations made by Google to Plaintiff. Compl. ¶¶ 32, 37, 85. Plaintiff therefore failed to allege any "pecuniary loss" that was "the direct, immediate, and proximate result of the misrepresentation," so its fraudulent concealment claim should be dismissed. *Warren*, 952 F. Supp. 2d at 623.

### C. Plaintiff Fails To State a Claim Under the Sherman Act (Count Five).

Plaintiff also attempts to repackage its tort claims against Defendants as federal antitrust claims. Specifically, Plaintiff alleges that Defendants compete and have acted anticompetitively

in a "market for automated, large-scale audiovisual content monetization through proprietary fingerprint-based rights-management systems" that, among other things, "detect copyrighted audio embedded within user-generated video content." Compl. ¶ 51. In addition to being time-barred, Plaintiff's Sherman Act claims should also be dismissed for failure to state a claim.

It is well-settled law that "combining an assertion of general antitrust violation with a claim of injury from breach of contract or tort does not automatically make the latter a claim arising under the antitrust laws." *Salerno v. Am. League of Pro. Baseball Clubs*, 429 F.2d 1003, 1004 (2d Cir. 1970). A complaint that "does little more than attach antitrust labels and conclusions to what is, at most, an ordinary contract dispute" should be dismissed. *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 135-36 (2d Cir. 2014). That is precisely the case here. The gravamen of Plaintiff's complaint is an individual business dispute—not the kind of anticompetitive conduct that the Sherman Act was intended to protect against. Count Five attempts to simply recite various legal elements required for Sherman Act claims, but contains no specific factual allegations to support those assertions and does little to package the elements together into an antitrust claim that makes economic sense.

### 1. Plaintiff Fails To State a Claim Under Section 1 of the Sherman Act (Count Five).

Plaintiff's Section 1 claim fails for at least two independent reasons. Plaintiff has not pleaded that it suffered an antitrust injury of the kind the Sherman Act is designed to protect, and it has not alleged facts supporting an inference of coordinated action.

*First*, Plaintiff alleges only injury to itself and not injury to competition, so it does not have antitrust standing because its asserted injury is not "of the type that the antitrust statute was intended to forestall." *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 540, 103 S.Ct. 897, 909 (1983). Because the antitrust laws "were

22

enacted for the protection of competition, not competitors," antitrust injury stems from "the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488–89, 97 S.Ct. 690, 697 (1977); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344, 110 S.Ct. 1884, 1894–95 (1990); *Itellective, Inc. v. Mass. Mut. Life Ins. Co.*, 190 F. Supp. 2d 600, 613 (S.D.N.Y. 2002) ("the plaintiff must still show that it specifically was injured by the particular aspect of the defendants' conduct that has adversely affected marketwide competition."). Whether a plaintiff has pleaded antitrust injury "is a threshold, pleading-stage inquiry," so "when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law." *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75–76 (2d Cir. 2013).

Here, Plaintiff's Section 1 claim should be dismissed because Plaintiff has not alleged facts showing that "the effect of the defendants' injury-causing conduct" was "anticompetitive." *PhramcyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*, 530 F. Supp. 3d 301, 331 (S.D.N.Y. 2021).[13] Plaintiff asserts antitrust injury based solely on effects on Plaintiff: the complaint alleges that Google's actions had anticompetitive effect because they foreclosed "a rapidly scaling independent rights holder," *i.e.* Plaintiff. Compl. ¶ 77. That is precisely the sort of purported individual effect and resulting injury that is "insufficient unless accompanied by allegations of injury to competition as well." *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp.

---

[13] As the Second Circuit has recognized, whether in a per se or rule of reason case, the challenged conduct must still have "an anticompetitive tendency," *i.e.*, "anticompetitive effect." *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 776 (2d Cir. 2016). As explained above, Plaintiff has not met that requirement. In addition, though Plaintiff purports to plead a per se violation, Compl. ¶ 70, Plaintiff has not pleaded conduct that would qualify for per se treatment. *Solent Freight Servs., Ltd. Inc. v. Alberty*, 914 F. Supp. 2d 312, 320–21 (E.D.N.Y. 2012) (alleged conduct did not fall under per se rule); *Cenedella*, 348 F. Supp. at 360 (dismissing per se violation where the plaintiff "makes one bare allegation in the amended complaint that the alleged conspiracy is a per se violation of the Sherman Act").

2d 372, 380 (S.D.N.Y. 2007); *Korshin v. Benedictine Hosp.*, 34 F. Supp. 2d 133, 138 (N.D.N.Y. 1999) (dismissing claim that "clearly alleged injury" only to plaintiff's "own business interests"); *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 479–80 (S.D.N.Y. 2001) (failure to plead antitrust injury where, despite the "varied and conclusory assertions of antitrust injury in this case, the Court finds that the harms they claim do not extend beyond injury to themselves").

In an attempt to repaint its individual harm as resulting from an anticompetitive effect, Plaintiff alleges that "Defendants' exclusionary conduct harmed competition by eliminating independent rights holders," "concentrating revenue among dominant labels and platform partners," "suppressing alternative monetization models," and "reducing price competition in content licensing." Compl. ¶ 78. Those allegations cannot save Plaintiff from its failure to plead antitrust injury.

For one, Plaintiff has not alleged a single specific fact to support those allegations. In the entirety of the complaint, Plaintiff does not allege that any rights holder other than Plaintiff was purportedly injured, that any monetization model other than Plaintiff's was purportedly suppressed, any facts about pricing or effects on pricing, or any facts about a single direct consumer who was affected by Google's conduct. "Without any factual allegations to support it, a conclusory statement that" Google's "conduct affected competition is insufficient to adequately plead an antitrust injury." *Xerox*, 511 F. Supp. 2d at 382.

Moreover, Plaintiff has not linked its own injury to any competition-reducing effect of Google's conduct, such as injury arising from increased prices or decreased choice in content monetization systems. *Casey's Distrib., Inc v. Nat'l Football League*, 2025 WL 1928544, at *5 (S.D.N.Y. July 14, 2025) ("Here, the antitrust injury is lacking because" the plaintiff's "purported injury does not match the anticipated anticompetitive effect of the ODP."); *Philadelphia Taxi*

24

*Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 344 (3d Cir. 2018) (dismissing complaint where "tellingly, they fail to aver an antitrust injury, such as a negative impact on consumers or to competition in general, let alone any link between this impact and the harms Appellants have suffered"). Plaintiff merely complains that its injury was caused by Google's communications with Plaintiff's distributors. *See* Compl. ¶ 75 ("As a direct and intended result of this coercion, CMG terminated monetization of Plaintiff's catalog."). That is a quintessential business dispute, not one sounding in competition that can give rise to antitrust standing. *See Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 417–18 (E.D.N.Y. 2013) (dismissing antitrust claim where "the only injury that plaintiffs claim to have suffered as a result of defendants' allegedly unlawful activities" was not the result of the challenged conspiracy, but merely "lost profits, through an economic injury").

*Second*, Plaintiff's Section 1 claim also fails because Plaintiff has not alleged "facts that would provide plausible grounds to infer" the purported conspiracy, between Google and other rights holders, that Plaintiff bases its Section 1 claim on. *Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, 516 F. Supp. 2d 270, 290 (S.D.N.Y. 2007). To allege an agreement, Plaintiff merely repeats the same conclusory statement that Google acted pursuant to "agreements, combinations, and/or conspiracies with dominant audiovisual rights holders and their affiliated distributors." Compl. ¶¶ 15, 60, 63–66, 68 (alleging Google acted in furtherance of a "conspiracy" with "dominant audiovisual rights holders" and that the exclusionary conduct was "in coordinated alignment with dominant audiovisual rights holders").[14] Plaintiff has not alleged the requisite

---

[14] Where Plaintiff's complaint is not clear about the basis for its claims, Defendants have drawn inferences in Plaintiff's favor and made arguments responding to the claims as they appear to be pleaded in the complaint. Defendants reserve the right to, in their reply brief, respond to any theories asserted by Plaintiff for the first time in its opposition brief that are not apparent from the face of the complaint. *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016),

"factual context suggesting agreement." *Twombly*, 550 U.S. at 549, 127 S.Ct. at 1961. In fact, Plaintiff does not even allege specific details regarding the agreement itself, such as who the "audiovisual rights holders and their affiliated distributors" were, when or where the agreement was reached, or what the terms of the agreement were. *Cenedella*, 348 F. Supp. 3d at 359 (dismissing complaint "completely devoid of facts indicating who agreed with whom, to what, and when"). If anything, Plaintiff has alleged facts that are equally consistent with unilateral conduct by Google to convey legitimate enforcement flags to distributors and unilateral conduct by distributors to terminate Plaintiff. Those facts are, at most, "merely consistent" with an agreement, which is not enough to withstand a motion to dismiss. *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966.

Instead of pleading factual details, Plaintiff repeatedly invokes "information and belief" as its sole support for the existence of an agreement between Defendants and unspecified parties. Compl. ¶¶ 15, 60. But it is well-settled that a plaintiff "may not rest on conclusory statements that the defendants agreed" in order to plausibly plead the existence of an agreement. *Wellnx*, 516 F. Supp. 2d at 290; *see also Whiteside v. Hover-Davis, Inc.*, 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020) (a plaintiff cannot merely assert "statements 'upon information and belief' without explaining the basis for the belief."). As with similar Sherman Act Section 1 claims lacking factual details supporting a plausible inference of the existence of an agreement, Plaintiff's claim should be dismissed. *E.g.*, *Cenedella*, 348 F. Supp. 3d at 359 (dismissing complaint based on "wholly conclusory allegations" of an agreement); *Wellnx*, 516 F. Supp. 2d at 291 (dismissing where the

---

*aff'd*, 707 F. App'x 724 (2d Cir. 2017) ("reply papers may properly address new material issues raised in the opposition papers"); *see also Storms v. United States*, 2015 WL 1196592, at *17 (E.D.N.Y. Mar. 16, 2015) (collecting cases declining to recognize allegations made for the first time in opposition to motion to dismiss).

26

conduct was "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted"); *Solent Freight*, 914 F. Supp. 2d at 321 (dismissing where "scant allegations fall short of allowing a reasonable inference that" the defendant and third party "had a horizontal agreement to restrain trade"); *World Arrow Tourism Enters., Ltd. v. Trans World Airlines, Inc.*, 582 F. Supp. 808, 810 (S.D.N.Y. 1984) ("When stripped of its conclusory allegations," the complaint contains "no facts pleaded that even remotely support an inference that the" alleged conspirators "participated in the decision in any way.").[15]

### 2. Plaintiff Fails To State a Claim Under Section 2 of the Sherman Act (Count Five).

Plaintiff's Section 2 claim also fails for multiple reasons. First, as explained above, Plaintiff has not pleaded antitrust injury—as is required for a Section 2 claim—because Plaintiff has not alleged that it suffered an injury resulting from any competition-reducing effects of Google's conduct. *Supra* at 22–25; *Xerox Corp.*, 511 F. Supp. 2d at 382.

In addition, Plaintiff fails to plead either of the elements required for a Section 2 monopolization claim. To state a claim under Section 2, "the plaintiff must demonstrate (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990).

---

[15] Plaintiff occasionally refers to its Section 1 claim as a "group boycott" claim. Compl. ¶¶ 61, 66. Regardless of what it is called, such a claim fails for the same reasons identified above, as well as because Plaintiff has not plausibly alleged a relevant market, *infra* at 28; Plaintiff has not alleged a horizontal agreement among competitors at the same level of the market to invoke the *per se* rule; and Plaintiff has only alleged injury to a single entity, Plaintiff, not harm to competition in the relevant market. *Moccio v. Cablevision Sys. Corp*, 208 F. Supp. 2d 361, 378–380 (E.D.N.Y. 2002).

*First*, Plaintiff's allegations that a relevant product market exists in "automated, large-scale audiovisual content monetization through proprietary fingerprint-based rights-management systems" and that Defendants possess monopoly power in that market, Compl. ¶¶ 51–56, are unsupported recitations of the requirements for alleging monopoly power masquerading as factual allegations. For example, Plaintiff's allegation that no reasonable substitutes exist is tautological: per the Complaint, no reasonable substitute exists because any possible alternatives "lack functional interchangeability and are not reasonable substitutes." Compl. ¶ 52.

As to Plaintiff's monopoly power allegation, Plaintiff simply asserts that YouTube has "effectively one hundred percent (100%) of commercially viable" products in the market, without specific factual allegations to support that ambitious claim. Compl. ¶ 55. As just one example, Plaintiff makes no allegation whatsoever explaining why household name content monetization systems for similar audiovisual content, like TikTok and Instagram, should be excluded from the alleged relevant market. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436–37 (3d Cir. 1997) (collecting cases dismissing claims where plaintiff "alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products").

Courts have commonly dismissed such conclusory allegations of a relevant market or monopoly power. *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171 (S.D.N.Y. 1995) ("Merely asserting that a commodity is in some way unique is insufficient to plead a relevant market."); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 142–43 & n.15 (E.D.N.Y. 2010) (dismissing Section 2 claim "because plaintiff has failed to allege that the defendant has monopoly power in anything but a conclusory fashion"); *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 729–30 (9th Cir. 2026) (affirming failure to plead market definition or monopoly power based on "conclusory" allegations about barriers to entry and the ability to

28

control prices and exclude competition).

*Second*, Plaintiff also fails to plausibly allege that the challenged "anticompetitive conduct"—interfering with Plaintiff's agreements with distributors—was "undertaken to obtain or cement" monopoly power. *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 486 (S.D.N.Y. 2016). Plaintiff claims that "Defendants willfully acquired and maintained their monopoly power through" a list of purportedly "exclusionary conduct," all of which was targeted at "independent rights holders." Compl. ¶ 73. But simply alleging the conclusion that the challenged conduct contributed to monopoly power is "far too vague and conclusory to adequately plead that, in so acting," the defendant "sought to maintain its monopoly power." *Shak*, 156 F. Supp 3d at 490. And critically, Plaintiff has not explained how the alleged elimination of a "label"—not a competitor in the alleged market for automated content monetization based on copyright detection—could help consolidate or maintain YouTube's monopoly power in a market for automated content monetization.[16]

Courts have dismissed similar allegations that do not tie the allegedly anticompetitive conduct to the acquisition or maintenance of monopoly power. *E.g.*, *Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 502 (S.D.N.Y. 2001) (dismissing Section 2 claim based on refusal of manufacturers to sell to plaintiff because the complaint "does not show how the" alleged misconduct "serves to further an alleged monopolization scheme"). For example, in *Shak*,

---

[16] Nor has Plaintiff pleaded facts showing that Defendants were motivated by anticompetitive intent. "A refusal to deal"—here, Google allegedly refused to make its Content ID services available to Plaintiff—"is generally not unlawful unless it is done for the purpose of monopolization." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 124 (2d Cir. 2007). Plaintiff has not alleged facts that account for the various legitimate enforcement rationales for the Content ID system that may have motivated Google to flag Plaintiff's catalog. *See id.* at 125–26 (dismissing Section 2 claim where Plaintiff did not "plead further facts plausibly suggesting an anticompetitive aspect to the refusal to deal," as there was "an apparent legitimate business reason" for the refusal to deal).

the court dismissed the plaintiffs' Section 2 claim because "Plaintiffs do not explain why" the defendant's conduct "helped it acquire monopoly power. Nor do plaintiffs claim, let alone explain why, this conduct helped" the defendant "maintain such power." 156 F. Supp. 3d at 487, 489 ("Plaintiffs' complaints fail to adequately plead conduct aimed at acquiring or maintaining monopoly power."). In *Arbitron Co. v. Tropicana Prod. Sales, Inc.*, 1993 WL 138965 (S.D.N.Y. Apr. 28, 1993), the court similarly dismissed a complaint because "there is absolutely no allegation in the proposed claim that" the defendant "acquired monopoly power or possessed a substantial market share as a result of the" alleged misconduct, *id.* at *8.

For the same reasons, Plaintiff's attempted monopolization claim, which contains no additional factual details but recites the legal elements of the claim, should also be dismissed. *See* Compl. ¶ 84. Plaintiff has not alleged facts showing that YouTube has a dangerous probability of achieving monopoly power in a plausibly defined relevant market, or that Defendants engaged in anticompetitive conduct with the specific intent to monopolize. *See Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 579 (S.D.N.Y. 2011) (dismissing allegations regarding dangerous probability of monopoly power that were "conclusory and speculative"); *Invamed, Inc. v. Barr Lab'ys, Inc.*, 22 F. Supp. 2d 210, 218 (S.D.N.Y. 1998) (dismissing attempted monopolization claim where plaintiff failed to plead anticompetitive conduct).

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's complaint with prejudice.

Dated:  February 23, 2026

Respectfully submitted,

*/s/ Erin J. Morgan*

Jeannie S. Rhee (*pro hac vice pending*)
**DUNN ISAACSON RHEE LLP**
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
jrhee@dirllp.com

Erin J. Morgan
**DUNN ISAACSON RHEE LLP**
11 Park Place
New York, NY 10007
Telephone: (202) 240-2900
emorgan@dirllp.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

31

## CERTIFICATE OF SERVICE

I, Erin J. Morgan, hereby certify that a copy of the foregoing Memorandum of Law in Support of

the Defendants' Motion to Dismiss the Complaint, filed through the CM/ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

on February 23, 2026.


Dated:  February 23, 2026                    */s/ Erin J. Morgan*

                                             Erin J. Morgan
                                             New York, New York


32