UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SOCIALRYSE LLC. (d/b/a SocialRyse Music Disco),

Plaintiffs,

    -against –                            Case No. 1:25-cv-10337-LAK


YOUTUBE LLC and GOOGLE LLC.,

Defendants.
-------------------------------------------------------------------X

**PLAINTIFF SOCIALRYSE LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PRELIMINARY STATEMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................. 3

FACTUAL BACKGROUND AND EXHIBIT EVIDENCE ....................... 4

LEGAL STANDARD ............................................................................ 6

ARGUMENT ...................................................................................... 7

I. DEFENDANTS' MOTION IMPROPERLY SEEKS TO RESOLVE
FACTUAL DISPUTES INAPPROPRIATE FOR A MOTION TO DISMISS .......... 7

II. PLAINTIFF'S CLAIMS ARE TIMELY BECAUSE DEFENDANTS
FRAUDULENTLY CONCEALED THEIR MISCONDUCT ................................ 8

III. THE COMPLAINT PLAUSIBLY ALLEGES TORTIOUS INTERFERENCE .... 9

IV. THE COMPLAINT PLAUSIBLY STATES A CLAIM UNDER
NEW YORK GENERAL BUSINESS LAW § 349 ........................................... 10

V. THE COMPLAINT PLAUSIBLY ALLEGES MONOPOLIZATION
AND OTHER EXCLUSIONARY CONDUCT UNDER THE SHERMAN ACT ..... 10

CONCLUSION ...................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

Anderson News, L.L.C. v. American Media, Inc.,680 F.3d 162 (2d Cir. 2012) ........................ 6

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .................................................................................... 6

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .............................................................. 6

Carvel Corp. v. Noonan, 3 N.Y.3d 182 (2004) ........................................................................ 13

Friedman v. Coldwater Creek, Inc., 551 F. Supp. 2d 164 (S.D.N.Y. 2008)............................... 13

Hendrickson Bros., Inc. v. State of New York, 840 F.2d 1065 (2d Cir. 1988) ........................... 9

Koch v. Christie's Int'l PLC, 699 F.3d 141 (2d Cir. 2012) ........................................................ 9

Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996) ............................................... 12

Merck & Co. v. Reynolds, 559 U.S. 633 (2010) ........................................................................ 9

MCI Communications Corp. v. AT&T Co., 708 F.2d 1081 (7th Cir. 1983) ............................... 18

Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co., 472 U.S. 284 (1985) ....................................................................................................................................... 19

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20 (1995) ....................................................................................................................................... 14

Pearl v. City of Long Beach, 296 F.3d 76 (2d Cir. 2002) .......................................................... 9

Todd v. Exxon Corp., 275 F.3d 191 (2d Cir. 2001) ................................................................... 16

United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001) ............................................... 17

Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971)....................................... 20

**Statutes**

15 U.S.C. § 2 ............................................................................................................................ 16

New York General Business Law § 349 ..................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 6

PRELIMINARY STATEMENT

Defendants YouTube LLC and Google LLC seek dismissal of a detailed complaint by recasting factual allegations, disregarding documentary evidence incorporated into the pleadings, and attempting to resolve factual disputes that cannot be decided on a motion to dismiss. The Complaint alleges that Defendants leveraged their control over YouTube's proprietary Content ID infrastructure to pressure distributors to terminate Plaintiff SocialRyse LLC and remove Plaintiff from the automated video monetization ecosystem.

This case does not merely involve injury to a single competitor. The Complaint alleges that Defendants used their control over Content ID and distributor access to that system to exclude independent rights holders from the market for automated monetization of copyrighted audio embedded in user-generated videos. (Compl. ¶¶ 48–54).

Defendants attempt to portray Plaintiff's removal as an independent decision by distributors. The Complaint and documentary evidence incorporated therein plausibly allege otherwise. Internal communications show YouTube personnel directing distributors to conduct a "strong purge" of certain labels and warning that CMS functionality could be restricted if those directives were not followed. (Compl. ¶¶ 17, 54; Ex. I).

At the same time, when Plaintiff contacted YouTube directly seeking clarification, YouTube representatives affirmatively stated that YouTube "did not suspend" Plaintiff's music and that the distributor alone made the decision. (Compl. ¶¶ 20–21; Exs. G–H). Plaintiff reasonably relied on those representations and did not discover Defendants' direct role until internal communications surfaced in later litigation involving its distributor. (Compl. ¶ 45).

Accepting these allegations as true—as required under Federal Rule of Civil Procedure 12(b)(6)—the Complaint plausibly alleges that Defendants privately orchestrated Plaintiff's removal from the Content ID ecosystem while publicly denying involvement. Defendants' motion therefore should be denied.

FACTUAL BACKGROUND AND EXHIBIT EVIDENCE

Plaintiff SocialRyse LLC is an independent music label that owns one hundred percent of the copyrights in an original catalog of music used by YouTube creators in video production. (Compl. ¶¶ 8–9).

Through authorized distributors such as AdRev and Create Music Group ("CMG"), Plaintiff enrolled its catalog in YouTube's automated Content ID system. Content ID detects copyrighted audio embedded in user-generated videos and allocates advertising revenue to rights holders.

In June 2020, YouTube—through AdRev—specifically inquired about Plaintiff's monetization model. Plaintiff transparently explained the model, and AdRev confirmed that YouTube had approved continued monetization. (Compl. ¶ 11; Ex. A).

On August 5, 2020, Plaintiff entered into a Distribution Agreement with Create Music Group. Under the agreement, CMG monetized Plaintiff's catalog through Content ID in exchange for a revenue share, with Plaintiff receiving eighty-five percent of net revenue. (Compl. ¶ 12; Ex. B).

Plaintiff's catalog rapidly achieved commercial success. Between September 2020 and January 2021, SocialRyse generated more than $600,000 in net royalties through Content ID. (Compl. ¶ 13; Ex. F).

Despite this success and despite Plaintiff's undisputed ownership of its copyrights, internal communications show that YouTube personnel began exerting pressure on CMG to remove certain artists and catalogs. Emails attached as Exhibit I show YouTube personnel directing CMG to conduct a "strong purge" and warning that CMS functionality could be "redacted" if CMG failed to comply.

Shortly thereafter, on or about March 1, 2021, CMG terminated monetization of Plaintiff's catalog citing YouTube "circumvention" concerns. (Compl. ¶ 19; Ex. J). Following CMG's termination, additional distributors implemented similar removals invoking the same rationale. (Compl. ¶ 19; Ex. C).

When Plaintiff contacted YouTube directly to investigate the sudden termination of its business, YouTube representatives denied involvement. In February 2021 YouTube stated that revenue-sharing arrangements were "out of our scope" and that "YouTube does not mediate on this anymore." (Compl. ¶ 20; Ex. G).

In July 2021 YouTube reiterated that "we did not suspend your music, and it was your label/distributor who decided to do so." (Compl. ¶ 21; Ex. H).

These statements were materially misleading. Plaintiff later discovered through litigation involving CMG that internal communications revealed YouTube's direct role in pressuring distributors to remove Plaintiff's catalog. (Compl. ¶ 45).

Even today, Defendants continue to apply "invalid reference" and related enforcement flags to Plaintiff's recordings, preventing distributors from monetizing Plaintiff's catalog and effectively blacklisting Plaintiff from the Content ID ecosystem. (Compl. ¶¶ 24–24a; Ex. L).

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the case.

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads factual content allowing the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

At the pleading stage, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Courts may not resolve factual disputes or weigh competing interpretations of the evidence. See Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162 (2d Cir. 2012).

## ARGUMENT

### I. DEFENDANTS' MOTION IMPROPERLY SEEKS TO RESOLVE FACTUAL DISPUTES

Defendants repeatedly ask the Court to accept their interpretation of disputed facts rather than the allegations set forth in the Complaint.

For example, Defendants contend that Plaintiff's distributor independently chose to terminate Plaintiff's catalog. The Complaint, however, alleges that YouTube personnel issued purge directives and warned distributors that failure to comply could result in CMS enforcement consequences. (Compl. ¶¶ 17, 54; Ex. I).

The Complaint further alleges that YouTube simultaneously denied involvement when Plaintiff sought clarification. (Compl. ¶¶ 20–21; Exs. G–H).

Resolving these competing interpretations requires factual determinations that cannot be made on a motion to dismiss.

## II. PLAINTIFF'S CLAIMS ARE TIMELY BECAUSE DEFENDANTS FRAUDULENTLY CONCEALED THEIR MISCONDUCT

Defendants argue that Plaintiff's claims accrued in March 2021 when CMG terminated Plaintiff's catalog. This argument ignores the doctrine of fraudulent concealment. Fraudulent concealment tolls the statute of limitations where a plaintiff plausibly alleges (1) concealment of the cause of action, (2) failure to discover the operative facts within the limitations period, and (3) due diligence. Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012); Pearl v. City of Long Beach, 296 F.3d 76, 82 (2d Cir. 2002).

The Complaint plausibly alleges each element. First, Defendants concealed their role through affirmative misrepresentations. When Plaintiff contacted YouTube in February and July 2021, YouTube explicitly stated that it "did not suspend" Plaintiff's music and that the distributor alone made the decision. (Compl. ¶¶ 20–21; Exs. G–H).

Second, Plaintiff remained unaware of Defendants' direct role until internal communications surfaced during discovery in litigation involving CMG. (Compl. ¶ 45). Third, Plaintiff exercised reasonable diligence by contacting YouTube immediately after its catalog was terminated and investigating the cause of the removal.

## III.    THE COMPLAINT PLAUSIBLY ALLEGES TORTIOUS INTERFERENCE

To state a claim for tortious interference under New York law, a plaintiff must allege the existence of a valid contract, the defendant's knowledge of that contract, intentional procurement of a breach, and resulting damages. Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996).

*The Complaint alleges each of these elements.*

Plaintiff had a valid Distribution Agreement with CMG. (Compl. ¶ 12; Ex. B).

The Complaint further alleges that YouTube personnel threatened CMS enforcement consequences unless CMG removed certain catalogs. (Compl. ¶¶ 17, 54; Ex. I). These allegations plausibly support the inference that Defendants intentionally induced CMG to terminate Plaintiff's monetization rights through economic pressure.

## IV. THE COMPLAINT PLAUSIBLY STATES A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW §349

### V.

New York General Business Law §349 prohibits materially misleading conduct that is consumer-oriented and causes injury. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20 (1995).

Although Defendants characterize this dispute as purely commercial, the Complaint alleges conduct affecting the broader marketplace for creators and rights holders who rely on YouTube's representations about the neutrality and operation of its monetization infrastructure. Accepting these allegations as true, the Complaint plausibly alleges conduct capable of misleading market participants and content creators.

## VI. THE COMPLAINT PLAUSIBLY ALLEGES MONOPOLIZATION AND OTHER EXCLUSIONARY CONDUCT UNDER THE SHERMAN ACT

Section 2 of the Sherman Act prohibits the acquisition or maintenance of monopoly power through exclusionary conduct rather than competition on the merits.

The Complaint alleges a market for automated monetization of copyrighted audio embedded in user-generated video content through proprietary fingerprinting and rights-management systems. (Compl. ¶ 48).

The Complaint further alleges substantial barriers to entry, including proprietary infrastructure, powerful network effects, and the absence of commercially viable substitutes capable of performing the same monetization function at comparable scale. (Compl. ¶ 50).

Courts analyzing digital platforms recognize that network effects and control over technological infrastructure can reinforce durable market power. See United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001).

The Complaint alleges that Defendants used their control over this infrastructure to pressure distributors to remove independent catalogs and prevent Plaintiff from re-entering the Content ID ecosystem. (Compl. ¶¶ 52–54).

A. Infrastructure Control and Market Exclusion

While courts apply "essential facility" concepts cautiously, exclusion from infrastructure necessary for meaningful participation in a market may support an inference of anticompetitive conduct when a dominant firm denies access without legitimate justification. See MCI Communications Corp. v. AT&T Co., 708 F.2d 1081 (7th Cir. 1983).

Here, the Complaint alleges that Defendants controlled the only commercially viable system capable of identifying and monetizing copyrighted audio across billions of user-generated videos and used that control to exclude independent competitors.

B. Coordinated Distributor Responses

The Complaint further alleges that multiple distributors terminated Plaintiff's catalog following YouTube directives. Antitrust law recognizes that coordinated refusals to deal may raise competitive concerns where market participants collectively exclude rivals. See Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co., 472 U.S. 284 (1985).

C. Continuing Anticompetitive Conduct

The Complaint also alleges ongoing enforcement actions preventing distributors from monetizing Plaintiff's recordings. Each overt act causing new injury may restart the limitations period. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

Dated: March 11, 2026
New York, New York

Respectfully submitted,

/s/ Courtney K. Davy, Esq.
Courtney K. Davy, Esq.
Attorney for Plaintiff
299 Broadway, Suite 800
New York, NY 10007
(516) 850-1800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss was filed through the CM/ECF system and will be sent electronically to all registered participants on March 13, 2026.

/s/ Courtney K. Davy, Esq.
Courtney K. Davy, Esq.