**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOCIALRYSE LLC<br>(d/b/a SocialRyse Music Disco),<br><br>     *Plaintiff,*<br><br> vs.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>     *Defendants*. | Case No. 1:25-cv-10337-LAK |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND.................................................................................................. 1

II.  PROCEDURAL HISTORY ............................................................................................... 4

III. ARGUMENT...................................................................................................................... 5

   A.   Plaintiff's Claims Are Time-Barred................................................................................ 5

      1.   Plaintiff's Claims Are Not Tolled By Fraudulent Concealment...................................... 6

      2.   Equitable Estoppel Does Not Apply To Save Plaintiff's Claims. ................................ 10

   B.   Plaintiffs' State-Law Claims Fail To State a Claim......................................................... 12

      1.   Plaintiff Fails To State a Claim for Tortious Interference with Contract. .................... 12

      2.   Plaintiff Fails To State a Claim for Tortious Interference with Prospective Economic Advantage. ............................................................................................................................. 14

      3.   Plaintiff Fails To State a Claim for Unfair Competition................................................. 17

   C.   Plaintiff's Sherman Act Section 2 Claim Fails To State a Claim. .................................... 18

CONCLUSION...................................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**

*Adams v. New York State Educ. Dep't*,
752 F. Supp. 2d 420 (S.D.N.Y. 2010),
*aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) ........................................ 18

*Ahluwalia v. St. George's Univ., LLC*,
63 F. Supp. 3d 251 (E.D.N.Y. 2014) .................................................................................... 15

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) .................................................................................................. 7

*Amigo Shuttle Inc. v. Port Authority of N.Y. and N.J.*,
2024 WL 4628330 (S.D.N.Y. Mar. 26, 2024) ...................................................................... 19

*Attia v. Dollar Fin. Corp.*,
2007 WL 1746806 (S.D.N.Y. June 15, 2007) ...................................................................... 20

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008) ............................................................................ 17, 18

*Black Radio Network, Inc. v. NYNEX Corp.*,
2000 WL 64874 (S.D.N.Y. Jan. 25, 2000) .......................................................................... 15

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477, 97 S. Ct. 690 (1977) ..................................................................................... 19

*Butala v. Agashiwala*,
916 F. Supp. 314 (S.D.N.Y. 1996) ....................................................................................... 11

*Chalmers v. Nat'l Collegiate Athletic Ass'n*,
2025 WL 3628416 (2d Cir. Dec. 15, 2025) ........................................................................... 5

*Corning Inc.* v. *Shenzhen Xinhao Photoelectric Tech. Co.*,
546 F. Supp. 3d 204 (W.D.N.Y. 2021) ........................................................................... 12, 14

*Crossword Magazine, Inc. v. Times Books*,
1997 WL 227998 (E.D.N.Y. May 5, 1997) .......................................................................... 20

*Darby Trading Inc. v. Shell Int'l Trading & Shipping Co. Ltd.*,
568 F. Supp. 2d 329 (S.D.N.Y. 2008) .................................................................................. 16

*Data Broadcasting Corp. v. Tele-Commc'ns, Inc.*,
1992 WL 350624 (S.D.N.Y. Nov. 19, 1992) ........................................................................ 17

*Davis v. Sabella*,
  851 N.Y.S.2d 704 (App. Div. 2008) ........................................................................... 12

*Ferring B.V. v. Allergan, Inc.*,
  4 F. Supp. 3d 612 (S.D.N.Y. 2014) ............................................................................ 17

*Friedman v. Coldwater Creek, Inc.*,
  551 F. Supp. 2d 164 (S.D.N.Y. 2008), *aff'd*, 321 F. App'x 58 (2d Cir. 2009) ......................... 16

*G.K.A. Beverage Corp. v. Honickman*,
  55 F.3d 762 (2d Cir. 1995) ....................................................................................... 13

*High Falls Brewing Co. v. Bos. Beer Corp.*,
  513 F. App'x 12 (2d Cir. 2013) ............................................................................. 13, 14

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  261 F. Supp. 2d 188 (E.D.N.Y. 2003) ......................................................................... 9

*Jones v. Haynes*,
  2025 WL 3090549 (S.D.N.Y. Oct. 10, 2025) ................................................................ 11

*Kao v. Brit. Airways, PLC*,
  2018 WL 501609 (S.D.N.Y. Jan. 19, 2018) ................................................................. 18

*M&J Mechanical Corp. v. Caldwell & Walsh Building Constr., Inc.*,
  790 F. Supp. 3d 334 (S.D.N.Y. 2025) ........................................................................ 19

*Madison Square Garden, L.P. v. Nat'l Hockey League*,
  2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) ................................................................. 5

*Mahoney v. Beacon City Sch. Dist.*,
  988 F. Supp. 395 (S.D.N.Y. 1997) .............................................................................. 7

*Milton Abeles, Inc. v. Farmers Pride, Inc.*,
  2007 WL 2028069 (E.D.N.Y. July 11, 2007) ............................................................... 16

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
  2013 WL 1500333 (S.D.N.Y. Apr. 12, 2013) ............................................................... 14

*Paige v. Police Dep't of City of Schenectady*,
  264 F.3d 197 (2d Cir. 2001) .................................................................................... 7, 9

*Pearl v. City of Long Beach*,
  296 F.3d 76 (2d Cir. 2002) .................................................................................. 6, 8, 11

*Red Rock Sourcing LLC v. JGX LLC*,
  2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) ............................................................... 15

*Stat. Phone Philly v. NYNEX Corp.*,
  116 F. Supp. 2d 468 (S.D.N.Y. 2000) ................................................................ passim

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004) ................................................................................ 15

*Studio - D v. Waverly Staging & Design LLC*,
  2025 WL 844420 (S.D.N.Y. Mar. 18, 2025) ........................................................ 17

*TileBar v. Glazzio Tiles*,
  723 F. Supp. 3d 164 (E.D.N.Y. 2024) .................................................................. 14

*Tsatskin v. Kordonsky*,
  189 A.D.3d 1296 (N.Y. App. Div. 2020) ......................................................... 15, 16

*Twersky v. Yeshiva Univ.*,
  993 F. Supp. 2d 429 (S.D.N.Y. 2014) .................................................................. 11

*US Airways, Inc. v. Sabre Holdings Corp.*,
  938 F.3d 43 (2d Cir. 2019) .................................................................................... 9

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*,
  455 F. App'x 102 (2d Cir. 2012) .......................................................................... 15

*Vitale v. Marlborough Gallery*,
  1994 WL 654494 (S.D.N.Y. July 5, 1994) ............................................................. 9

*Wolf v. Wagner Spray Tech Corp.*,
  715 F. Supp. 504 (S.D.N.Y. 1989) ...................................................................... 6, 7

*YCF Trading Inc. v. Skullcandy, Inc.*,
  781 F. Supp. 3d 56 (E.D.N.Y. 2025) .................................................................... 12

*Yellow Page Sol'ns, Inc. v. Bell Atl. Yellow Pages Co.*,
  2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001) ...................................................... 20

Since Defendants Google LLC and YouTube, LLC moved to dismiss Plaintiff SocialRyse LLC's complaint, Plaintiff has filed an amended complaint, 11 exhibits to that complaint, and two briefs opposing Defendant's motion.  But Plaintiff's efforts to save its claims only undermine them.  The new facts Plaintiff alleges make explicit what was already clear from the first complaint: because Plaintiff was aware of facts giving rise to its claims by no later than March 2021, its claims are untimely, and Plaintiff has failed to state a plausible claim for relief.

## I.    FACTUAL BACKGROUND

By March 1, 2021, Plaintiff knew Google had informed Plaintiff's distributor, Create Music Group ("CMG"), that Plaintiff was engaged in conduct that violated Google's YouTube policies.  FAC ¶ 28.[1]  Plaintiff also knew that CMG suspended Plaintiff's assets on that basis.  FAC ¶ 28.  On that date, CMG sent Plaintiff an email stating:

> "**YouTube has informed us that the licensing activity in which you are engaged in must cease because YouTube has determined that this activity is a violation of YouTube's Terms of Service**.  Moreover, **the nature of the activity circumvents Content ID** and hinders other 3rd party rights holders, who have begun their own investigations into this matter. . . . **As such, we have no choice but to suspend your assets indefinitely, including any potential claims and royalties tied to the assets flagged by YouTube's Abuse team**."

Ex. J, Dkt. 16-10, at 1; FAC ¶ 23 (CMG "publicly attributed the suspension to YouTube's enforcement directives").[2]  Plaintiff responded, asserting that it was not in violation of YouTube's policies and copying Plaintiff's counsel (Devin Kothari).  Ex. J at 1-2.

On July 1, 2021, Plaintiff contacted YouTube Partner Support, forwarding the March 1

---

[1] Plaintiff filed the same amended complaint twice on the docket, once with 10 exhibits (Exhibits A through J) attached (Dkt. 16) and once with an additional exhibit (Exhibit L) attached (Dkt. 21). Defendants treat all 11 exhibits as attached to that First Amended Complaint, or "FAC."

[2] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.

email it had received from CMG.  FAC ¶ 35.  On July 8, 2021, Google responded, confirming that Google had presented findings about Plaintiff to CMG but declining to provide details:

> "**We're not able to discuss with you the details of the investigation since this is between YouTube and Create Music Group.  Although there were findings presented to your distributor,** it is still their decision on what action to take.  The decision to suspend your assets and remove your references was made by Create Music.  We're not able to mediate between you and your distributor, especially if you are under a legal agreement or contract with them."

Ex. H, Dkt. 16-8, at 1; FAC ¶ 36.  Google also told Plaintiff: "The best way to deal with this is to reach out to Create Music directly if you think the suspension is incorrect, and to work out a resolution with them.  If you strongly believe that Create Music made a mistake in their decision and you're not able to come to an agreement with them, you may consider seeking legal advice to check for options you may take legally."  Ex. H at 1.

Around the same time, Plaintiff learned that Google's enforcement efforts were not limited to CMG.  FAC ¶ 30.  On July 13, 2021, RouteNote, another distributor for Plaintiff, notified Plaintiff: "It has been brought to our attention that **your content has been directly involved in YouTube Partner Programme circumvention** through the use of sound recording assets uploaded to Content ID claiming ineligible video content."  Ex. C, Dkt. 16-3, at 1.  The next day, Plaintiff responded to RouteNote: "If you do not pay us, we will be forced to take legal action against your company."  *Id*. at 2.  On July 15, RouteNote again told Plaintiff that  "payments have been suspended" because "**we are investigating your account until it is cleared that YouTube [is] not filing action against you as an artist for the circumvention activity**."  *Id.*

On August 23, 2021, Plaintiff added its counsel (Devin Kothari) to the email chain, stating that Plaintiff had not yet "received payment" and that it "did nothing wrong."  Ex. C at 3.  The same day, Plaintiff acknowledged in an email to its counsel Plaintiff's knowledge that the RouteNote emails related to distributor terminations based on Google telling them that Plaintiff

2

had violated YouTube policies, stating: "Another distributor.  They don't want to pay me as well. **Same story with youtube** and they owe me $6000."  *Id.* at 4.

Two years later, on August 16, 2023, Plaintiff followed up with RouteNote, threatening: "It's been two years with no update.  We did nothing wrong.  Pay me or I'll file a lawsuit. Potentially class action."  Ex. E, Dkt. 16-6, at 2.  Plaintiff does not allege or attach any efforts to follow up—with Defendants, CMG, RouteNote, or others—between August 2021 and August 2023.  *See* FAC ¶¶ 39-40.

Plaintiff further claims that it learned of new facts in May to August 2023, when it approached another distributor, Venice Music, to reinstate its catalog, and in March 2023, when it reviewed discovery obtained in state litigation against CMG.  FAC ¶¶ 41-44.  Plaintiff cites two exhibits.  One is an undated screenshot of distributor Venice Music's internal platform that allegedly shows that two of Plaintiff's assets were marked within YouTube as "Invalid reference" and "Potential violation of YouTube monetization policy."  FAC ¶ 42; Ex. L, Dkt. 21-1.

The second is an October 5, 2020 to April 14, 2021 email thread between YouTube Label Partnerships and CMG, showing that, consistent with what CMG told Plaintiff in its March 1, 2021 termination notice, Google flagged Plaintiff (among others) to CMG as engaging in "weird behavior" and "claiming content inappropriately via Content ID."  Ex. I, Dkt. 16-9, at 6.   The exhibit shows that Google requested that CMG investigate the flagged assets; asked CMG what it had learned in its investigation; asked how CMG intended to proceed; and told CMG that Google would not decide for CMG how to proceed in its relationships with partners (including Plaintiff):

- "Can you all dig into these today and unlink the channels/partners if it looks like these are fishy?"  Ex. I at 6 (Oct. 5, 2020).
- "Pinging this thread again with a few new examples . . . . Can you please look into them? Where did you land with SocialRyse?"  *Id.* at 5 (Jan. 5, 2021).
- "Up to you how you want to deal vis a vis legal and your partners, but I want to make sure there's not an extended period where these sit and are not resolved.  What approach did

you take with the channels/companies from the original thread back in October? Is SocialRyse legit, and still a Create partner?" *Id.* at 4 (Jan. 13, 2021).

- "On a related note, that list of artists we sent was a guideline - not sure if I mentioned that you may discover some false positives in there. Did you discover any that were legit?" *Id.* at 2 (Feb. 18, 2021).

CMG in turn updated Google on CMG's investigation into Plaintiff (and others):

- "We've been digging into these issues you've addressed . . . . After our team dug into the clients and searched google - we did find one client," SocialRyse, "who publicly has a site for licensing his music. . . . After looking closer, I do think these guys are just bouncing from music company to music company." *Id.* at 5-6 (Oct. 14, 2020).

- "We've been trying to get precise explanations from the record labels with ambiguous answers. . . . When we look at the videos you sent we see the same behavior and at a minimum the channels are clearly abusing the system." *Id.* at 4 (Jan. 12, 2021).

- "Socialryse is the only one with a formal licensing website so our team had warned them but given them the benefit"; "however since the activity has continued - we will be taking the above actions," i.e., "removing claims and/or references." *Id.* at 3-4 (Jan. 15, 2021).

According to CMG, by January 15, 2021, it had reached out to and "warned" Plaintiff about the suspicious activity of Plaintiff's assets, but "the activity has continued." *Id.* at 4, 6.

When faced with delays from CMG in investigating flagged assets, Google noted: "I'm more concerned with addressing T&S's [Google Trust & Safety's] concerns than your partners (obviously), but don't want to step on any toes with your partners. As you remember with T&S the hammer falls on Create, not these folks, who tend to appear and disappear quickly." Ex. I at 4. Google further stated that, if CMG did not investigate suspicious artists or assets, "the team will likely redact some features or put all claims to pending." *Id.* at 3. No statement by Google directed CMG to terminate its relationship with any particular partner, including Plaintiff.

## II.    PROCEDURAL HISTORY

On December 14, 2025, almost 5 years after the events in the complaint, Plaintiff filed the present lawsuit. Dkt. 1. Plaintiff referenced a number of exhibits that purportedly accompanied its allegations, but did not attach them or serve them on Defendants.

On February 23, 2026, Defendants timely filed a motion to dismiss (Dkt. 12). Plaintiff failed to file a timely opposition by March 9. On March 13, Plaintiff filed a first "reply memorandum of law" (Dkt. 15) in opposition to Defendants' motion to dismiss.

Fourteen hours later, Plaintiff filed: the First Amended Complaint (Dkt. 16), a "second reply memorandum" (Dkt. 18, "Opposition" or "Opp."), and a letter requesting that the Court "consider the Corrected Memorandum as the operative opposition brief and evaluate Defendants' Motion to Dismiss against the Amended Complaint." (Dkt. 17). Defendants filed a letter consenting to Plaintiff's request, provided that the Court allow Defendants a 10-page and 1-week extension to respond. Dkt. 19. Plaintiff filed a letter agreeing, provided that it could file a surreply. Dkt. 20. The Court granted the parties' requests. Dkts. 22, 23, 24.

The FAC—now the operative complaint—dropped several claims, including claims for (1) violation of New York General Business Law § 349 claim based on "deceptive acts"; (2) fraudulent concealment; and (3) violation of Sherman Act Section 1. Opp. at 6-7.

## III.    ARGUMENT

### A. Plaintiff's Claims Are Time-Barred.

Plaintiff cannot deny that all of its causes of action accrued by March 2021, or that the statute of limitations ran in March 2024 for Plaintiff's state-law tort claims and March 2025 for Plaintiff's Sherman Act claim.[3] Instead, Plaintiff asserts that its claims were timely as a result of

---

[3] *See* Dkt. 13, at 7-8 ("Motion" or "Mot."); Opp. at 6. Plaintiff's added request for injunctive relief pursuant to the Clayton Act, FAC ¶ 104, is similarly time-barred. "Once the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not be applied in the case." *Chalmers v. Nat'l Collegiate Athletic Ass'n*, 2025 WL 3628416, at *5 (2d Cir. Dec. 15, 2025). Plaintiff has not met its burden to show that its almost 5-year delay in bringing suit was excusable. *Id.* at *5-6 (dismissing request for injunctive relief based on Sherman Act's 4-year statute of limitations); *Madison Square Garden, L.P. v. Nat'l Hockey League*, 2008 WL 4547518, at *10-11 (S.D.N.Y. Oct. 10, 2008) (same). Because it is clear from the face of the FAC Plaintiff's claims are untimely, the Court should dismiss the suit as a matter of law. Mot. at 6.

either fraudulent concealment or equitable estoppel.[4]  But Plaintiff knew of its alleged injury—and Defendants' role in that injury—in 2021.  Neither doctrine applies.

### 1. Plaintiff's Claims Are Not Tolled By Fraudulent Concealment.

Plaintiff asserts its claims are timely because—by telling Plaintiff that Google does not "mediate between creators and distributors"; that CMG, not Google, suspended Plaintiff's assets; and that, if Plaintiff could not resolve its issue with CMG, it could seek legal advice to evaluate its options—Defendants fraudulently concealed the existence of  Plaintiff's causes of action until 2023.  Opp. at 8-9 (citing FAC ¶ 36a and Ex. H).  Plaintiff's argument is meritless: the facts Plaintiff knew in 2021 put it on notice of its claims, the statements Plaintiff identified as "concealment" did nothing to obscure those facts, and the facts Plaintiff allegedly learned in 2023 did not justify Plaintiff's failure to timely pursue its claims.

Fraudulent concealment tolls the statute of limitations only if it "succeeds in depriving plaintiffs of notice" of its claims. *Stat. Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 481-83 (S.D.N.Y. 2000).  Courts distinguish "between fraudulent concealment of the existence of a cause of action and fraudulent concealment of facts that, if known, would enhance a plaintiff's ability to prevail as to a cause of action of which the plaintiff was previously aware." *Pearl*, 296 F.3d at 84.  For fraudulent concealment, only the former matters.  That is why courts "look to the time when a significant fact emerges" to determine when a plaintiff was on notice of its claim, *Wolf v. Wagner Spray Tech Corp.*, 715 F. Supp. 504, 509 (S.D.N.Y. 1989), not when a plaintiff had all of the information that might corroborate its story.  *Paige v. Police Dep't of City of*

---

[4] In both federal law and New York law cases, courts have used "the label 'equitable estoppel' to cover both" fraudulent concealment "and where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit." *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002).  As explained below, Plaintiff has not sufficiently alleged that either applies.

*Schenectady*, 264 F.3d 197, 200 (2d Cir. 2001) ("Although some of the facts putatively concealed by the defendants might have strengthened [plaintiff's] case by corroborating her story," "the absence of those facts did not sufficiently justify the plaintiff in not pursuing her cause of action.").

On the FAC's face, it is clear Plaintiff was on notice of the facts giving rise to its claims no later than March 2021. Plaintiff alleges that, by March 1, 2021, CMG had told Plaintiff that "YouTube has informed us that the licensing activity in which you are engaged in must cease because YouTube has determined that this activity is a violation of YouTube's Terms of Service," and that, "as such, we have no choice but to suspend your assets indefinitely, including any potential claims and royalties tied to the assets flagged by YouTube's Abuse team." Ex. J at 1; FAC ¶ 23. By July 8, 2021, Google confirmed that the investigation into Plaintiff's content was "between YouTube and Create Music Group," and that "there were findings presented to your distributor." Ex. H at 1. And by July 13, 2021, Plaintiff knew that Google had shared concerns with at least one other distributor, who also suspended Plaintiff's assets as a result. Ex. C at 1. These direct statements to Plaintiff that Google had flagged its behavior for violating Google's terms constitute "significant facts," *Wolf*, 715 F. Supp. at 509, that Google was involved in the suspension of Plaintiff's assets and thus started the clock on the claims alleged in the FAC.[5]

Plaintiff cherry-picks aspects of Google's statements to Plaintiff to argue that Google's statements concealed the existence of Plaintiff's claims. FAC ¶¶ 32, 36a, 37. But the full exhibits themselves—which control over Plaintiff's preferred framing[6]—reveal that none of Google's

---

[5] Plaintiff did not just "know enough to sue." *Stat. Phone*, 116 F. Supp. 2d at 482-83. It actually involved an attorney in its communications with distributors. *E.g.*, Ex. C at 3 (Aug. 23, 2021: "I'm looping in my lawyer Devin."). "Retaining an attorney will end equitable tolling of a limitations period." *Mahoney v. Beacon City Sch. Dist.*, 988 F. Supp. 395, 400 (S.D.N.Y. 1997).

[6] *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("Where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

7

statements concealed a material fact from Plaintiff such that it was "impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl*, 296 F.3d at 85; *Stat. Phone*, 116 F. Supp. 2d at 482-83 (no equitable tolling where the plaintiff "failed to show that this concealment prevented their discovery of the nature of their claim").

*First*, Plaintiff argues that, in February 2021, Google "affirmatively indicated that revenue-sharing arrangements between labels and channels were" "not subject to YouTube enforcement action." FAC ¶ 32. Google was responding to Plaintiff's question: "am I allowed to intentionally instruct the channel to place my music in their [videos] for the sole purpose of earning money from the video that contains primary third party content?" Ex. F, Dkt. 16-7 at 5. Google responded: "You could come up with an agreement with [the channel] directly however, YouTube does not mediate on this anymore and is already beyond our scope." *Id.* at 3, 8. This statement could not have concealed Plaintiff's claims because it (1) was about Plaintiff's relationships with channels, not Google's enforcement actions or communications with distributors; and (2) pre-dated CMG's and Google's March and July 2021 communications telling Plaintiff of Google's role in CMG's decision to terminate Plaintiff's assets (and a similar July 2021 RouteNote communication).

*Second*, Plaintiff argues that Google's July 2021 statements that it was CMG and not Google who suspended Plaintiff's assets (and that Google would not even able to do so), Ex. H at 1, 3, "reinforced YouTube's misrepresentation that CMG had acted independently and that YouTube played no role in the suspension of Plaintiff's catalog." FAC ¶ 36a. But even Plaintiff admits that it is true that CMG, not Google, suspended its assets. FAC ¶¶ 28-29. And Plaintiff ignores that, in the same email, Google confirmed it had presented to CMG findings about Plaintiff's assets, which had resulted in an investigation. Ex. H at 1. These statements are consistent with Plaintiff's other allegations. FAC ¶ 28; Ex. J at 1; Ex. C at 1-2. They are not

misrepresentations, much less fraudulent ones, and did not "deprive" Plaintiff "of the information that it needed to bring" its claims.

*Third*, Plaintiff argues that Google fraudulently concealed its claims by stating: "If you strongly believe that Create Music made a mistake in their decision and you're not able to come to an agreement with them, you may consider seeking legal advice to check for options you may take legally." Ex. H at 1. Plaintiff claims this statement "affirmatively redirected Plaintiff toward pursuing a different party" (i.e., CMG). Opp. at 9. But its plain text merely encouraged Plaintiff to seek legal advice and "check for options," not to check for options to sue <u>someone besides Google</u>. Moreover, it is not credible to suggest that encouraging a party to seek counsel is concealment of legal claims—if anything, it is the opposite. In any event, Plaintiff cites no case law for its argument that "actively redirecting a plaintiff's legal efforts" (which Plaintiff's exhibit shows Google did not do) constitutes "actionable concealment." Opp. at 9.

Given that none of the statements Plaintiff invokes fraudulently concealed anything—let alone Plaintiff's claims, of which Plaintiff was on notice of since at least March 2021—the inquiry should end there.[7] That said, the information Plaintiff asserts that it did not discover until 2023 is also insufficient to support fraudulent concealment because "the absence of those facts did not sufficiently justify the plaintiff in not pursuing" its causes of action. *Paige*, 264 F.3d at 200. For

---

[7] Plaintiff has also disclaimed relying on any "continuing tort" doctrine for his state-law claims. Opp. at 7. Nor has Plaintiff pleaded facts sufficient to invoke the Sherman Act's "continuing violations" doctrine, which applies only if the defendant engages in "a new and independent act that is not merely a reaffirmation of a previous act." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019). Plaintiff has pleaded only that Google "<u>continues to maintain</u> backend enforcement flags" on Plaintiff's catalog, FAC ¶¶ 48, 104—not "new and independent" acts. *Vitale v. Marlborough Gallery*, 1994 WL 654494, at *5 (S.D.N.Y. July 5, 1994) ("If an initial refusal to deal with a party is final, the statute of limitations begins to run and does not restart when the plaintiff makes subsequent unsuccessful efforts to deal."); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 228-29 (E.D.N.Y. 2003) ("reaffirmations of an initial act" "will not extend the limitations period," despite continuing "inertial consequences").

example, Plaintiff claims that Exhibit L, an undated, partial screenshot showing that two of Plaintiff's assets had been marked for "potential violation of YouTube monetization policy," provided "independent evidence of Defendants' ongoing enforcement mechanism" and of "cross-distributor restrictions." FAC ¶¶ 42, 44. But the FAC makes clear that Plaintiff knew in 2021 that Google's enforcement activity was not limited to CMG and that its assets had been suspended. *E.g.*, FAC ¶ 30 (RouteNote telling Plaintiff in July 2021 that it was suspending Plaintiff's assets because Plaintiff's content was "directly involved in YouTube Partner Programme circumvention"); Ex. C at 1 ("Action has been taken to remove your assets from YouTube.").

Similarly, Plaintiff points to various Google statements in Exhibit I as purportedly showing for the first time that Defendants played a "direct coercive role" in CMG's termination of Plaintiff. FAC ¶ 47. Even taking Plaintiff's interpretation of the document as true, that information would not be new: CMG explicitly told Plaintiff that, after Google informed CMG that Plaintiff's assets violated "YouTube's terms of service," CMG "had no choice" but to suspend Plaintiff's assets. Ex. J at 1. Moreover, as discussed *infra* § II.A, Exhibit I undermines rather than bolsters any interference claim Plaintiff allegedly has, because it shows that Google pushed CMG to investigate various partners' (including Plaintiff's) circumvention, not pressured it to terminate its contract with any partner.

### 2. Equitable Estoppel Does Not Apply To Save Plaintiff's Claims.

In its FAC and Opposition, Plaintiff argues that its claims also should not be time-barred because equitable estoppel applies. Opp. at 10 (citing FAC ¶ 46). To the extent Plaintiff seeks to invoke equitable estoppel as distinct from fraudulent concealment,[8] Plaintiff's allegations do not

---

[8] Some courts have suggested that, under New York state law, equitable estoppel and fraudulent concealment are co-extensive. *E.g.*, *Stat. Phone*, 116 F. Supp. 2d at 484. To the extent Plaintiff simply seeks to invoke an equitable estoppel doctrine that is the same as fraudulent concealment, Plaintiff's equitable estoppel arguments fail for the same reasons as stated above. Defendants

plead a basis for equitable estoppel.

*First*, Plaintiff cannot invoke a distinct equitable estoppel doctrine for its federal or state-law claims because its fraudulent concealment allegations are "logically inconsistent" with equitable estoppel. *Stat. Phone*, 116 F. Supp. 2d at 484. Plaintiff alleges for purposes of fraudulent concealment that it did not know of its cause of action in 2021. FAC ¶ 47; Opp. at 8. But "a condition precedent to asserting equitable estoppel is that plaintiffs knew of their cause of action— knowledge" Plaintiff denies "having for purposes of" its "argument of fraudulent concealment." *Butala v. Agashiwala*, 916 F. Supp. 314, 321 n.1 (S.D.N.Y. 1996). Equitable estoppel therefore cannot apply. *Id.* (rejecting similar argument as "it is paradoxical for plaintiffs to argue, on the one hand, that they knew about their claim for the purpose of equitable estoppel, but, on the other hand, that they did not know about their injury for the purpose of determining when the action accrued in the first place"); *Stat. Phone*, 116 F. Supp. 2d at 484 (same).

*Second*, Plaintiff also has not sufficiently alleged "that the defendant made a definite misrepresentation of fact and had reason to believe that plaintiff would rely on it." *Jones v. Haynes*, 2025 WL 3090549, at *10 (S.D.N.Y. Oct. 10, 2025). To support equitable estoppel, the misrepresentation "must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014); *cf. Pearl*, 296 F.3d at 82-83 (for example, a defendant represented during the period of limitations "that compensation would be paid without need for lawsuit"). Here, Plaintiff points again to Google's July 2021 statement as the requisite misrepresentation, claiming that Google "directed" Plaintiff "to sue CMG rather than YouTube."

---

assume *arguendo* that Plaintiff's invocation of "equitable estoppel" refers to any subset of equitable estoppel that is distinct from fraudulent concealment. *Supra* at 6 n.4.

Opp. at 10.  From the face of Plaintiff's cited exhibit, Google's statement was neither a "definite misrepresentation of fact" nor "specifically directed at preventing the plaintiff from bringing suit" against Defendants: Google simply told Plaintiff that "you may consider seeking legal advice to check for options you may take legally."  Ex. H at 1.  Plaintiff therefore has not alleged a required element for equitable estoppel,[9] and its claims should be dismissed as time-barred.

### B. Plaintiffs' State-Law Claims Fail To State a Claim.

Plaintiff's New York state-law tortious interference with contract (Count One), tortious interference with prospective economic advantage (Count Two), and unfair competition (Count Four) claims should also be dismissed for failure to state a claim.  Plaintiff's added factual allegations and newly attached exhibits do not rescue its claims.

### 1. Plaintiff Fails To State a Claim for Tortious Interference with Contract.

Plaintiff's amended tortious interference with contract claim should be dismissed for failure to state a claim.  Plaintiff has not pleaded required elements of the claim: (1) "the defendant's intentional procurement of the third-party's breach of the contract without justification," and (2) "the defendant's knowledge" of a contract between Plaintiff and CMG. *YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 85 (E.D.N.Y. 2025).

*First*, Plaintiff has not pleaded that Defendants' alleged interference was "specifically intended to interfere with the relevant contract," as opposed to "an interference that is merely an intrusion that is negligent or incident to some other lawful purpose."  *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 212 (W.D.N.Y. 2021).  At the pleading

---

[9] Plaintiff also failed to plausibly allege that its reliance upon some hypothetical representation by Google that Plaintiff should sue CMG, not Google or YouTube, would have been reasonable. *See Davis v. Sabella*, 851 N.Y.S.2d 704 (App. Div. 2008) (no equitable estoppel where "plaintiff's reliance on any representation" by defendant "was neither reasonable nor justified").

12

stage, courts dismiss claims where, based on Plaintiff's allegations, "the target" of Defendants' conduct was not Plaintiff's contractual relationship. *High Falls Brewing Co. v. Bos. Beer Corp.*, 513 F. App'x 12, 13-14 (2d Cir. 2013); *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 767-68 (2d Cir. 1995). For example, the Second Circuit affirmed dismissal even where the defendants "promised" "additional benefits in exchange for" dropping a contract with the plaintiff—because the defendants did so in pursuit of acquiring a company "on their terms," such that interference with the plaintiff's contract was merely "incidental" to the defendants' goals in the acquisition. *High Falls Brewing Co.*, 513 F. App'x at 13-14.

Here, the facts Plaintiff pleaded state that the "target" of Defendants' conduct was not Plaintiff's contract with CMG; Google was merely pursuing its own enforcement interests on YouTube. Plaintiff's specific intent argument rests on its allegations about Exhibit I. Opp. at 12-13. But Exhibit I states only that Google encouraged CMG to conduct its own investigations and reach its own decisions about Google's enforcement flags, including as to Plaintiff. Ex. I at 2 ("That list of artists we sent was a guideline - not sure if I mentioned that you may discover some false positives in there. Did you discover any that were legit?"), 4 ("Up to you how you want to deal vis a vis legal and your partners . . . Is SocialRyse legit, and still a Create partner?"), 5 ("Where did you land with SocialRyse?"), 6 ("Can you all dig into these today and unlink the channels/partners if it looks like these are fishy?"). Google's emails reiterate that its purpose was to investigate "suspicious artists" who were "claiming content inappropriately via Content ID." Ex. I at 3, 6.

Plaintiff's other specific intent arguments are unavailing. Plaintiff points to its allegation that "YouTube knew that compliance with these directives would necessarily require CMG to terminate its contractual relationship with Plaintiff." FAC ¶ 74; Opp. at 13. But knowledge that

13

an act <u>might</u> cause interference with a contract is not the same as specific intent to interfere with that contract.  Even "acting without intent to cause the breach, but with substantial certainty that it will occur, is generally not improper if the interfering party is advancing its own interest."  *High Falls Brewing Co.*, 513 F. App'x at 14 (citing Restatement (Second) of Torts 766 cmt. j).  Plaintiff also claims that Defendants made "threats" to CMG, exerted "escalating pressure" on CMG, and was "targeting" CMG.  Opp. at 12-13.  In addition to being inaccurate, such assertions at best relate to Defendants' intent as to CMG, not Plaintiff, and do not distinguish between any lawful purpose and specific intent to interfere with Plaintiff's contract with CMG.

*Second*, though the FAC adds allegations about the purportedly breached terms of Plaintiff's contract with CMG, Plaintiff has not pleaded facts that plausibly allege Defendants had "actual knowledge" "of the contractual provisions that they purportedly caused" CMG "to breach."  *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 2013 WL 1500333, at *4 (S.D.N.Y. Apr. 12, 2013).  Plaintiff alleges only that Defendants "were aware that SocialRyse's catalog was being monetized through CMG's CMS," FAC ¶ 73—not that Defendants were aware of the particulars of any contract between CMG and Plaintiff, "let alone the specific sections allegedly breached."  *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 201-02 (E.D.N.Y. 2024) ("it is not enough to allege that a defendant had constructive knowledge of or should have known about a contract").  Simply pleading "a defendant's general awareness that the plaintiff did business with third parties," *Corning Inc.*, 546 F. Supp. 3d at 212, or "conclusory allegations that a defendant knew or should have known of a contract," *Tilebar*, 723 F. Supp. 3d at 201, are not enough.

### 2. Plaintiff Fails To State a Claim for Tortious Interference with Prospective Economic Advantage.

Plaintiff's claim for tortious interference with prospective economic advantage fails because Plaintiff has not pleaded that Defendants' alleged interference "was accomplished by

wrongful means or that the defendant acted for the sole purpose of harming the plaintiff." *Tsatskin v. Kordonsky*, 189 A.D.3d 1296, 1298 (N.Y. App. Div. 2020).[10]  Plaintiff acknowledges that the FAC does not rely on "sole malicious purpose," so it must allege "wrongful means."  Opp. at 14. Plaintiff now claims to have alleged three categories of conduct that constitute wrongful means, Opp. at 13-14, none of which meet the standard.

*First*, Plaintiff's allegation of fraudulent concealment, based on "YouTube's affirmative misrepresentations to Plaintiff" in July 2021, cannot support a tortious interference claim.  Opp. at 13.   The alleged misrepresentations cannot possibly have been "the proximate cause of the rejection of the plaintiff's proposed contractual relations."  *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004).  Plaintiff itself concedes that Google's statements were "separate from the underlying interference: they were made months after the termination itself."  Opp. at 9.  Moreover, Google's statements were not directed at CMG—the third party—but at Plaintiff itself.  *See Black Radio Network, Inc. v. NYNEX Corp.*, 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000) ("the defendant must direct some activities towards the third party").  Accordingly, Google's statements to Plaintiff in July 2021 could not have been the "wrongful means" that caused CMG (or any other distributor) to terminate its relationship with Plaintiff in March 2021 (or at any other time).  *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*, 455 F. App'x 102, 106-07 (2d Cir. 2012) (allegations "fail because there is no allegation that this conduct—which was undisputedly directed" at plaintiff—"proximately caused"

---

[10] The FAC alleges that Defendants interfered with Plaintiff's "ability to enter into distribution relationships with additional distributors" other than CMG.  FAC ¶ 80.  Plaintiff has failed to allege Defendants' knowledge of Plaintiff's relationships with those additional distributors.  *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 266 (E.D.N.Y. 2014) (dismissing where plaintiff "does not adequately plead that defendant had actual awareness of the Plaintiff's business relationships with any third parties"); *Red Rock Sourcing LLC v. JGX LLC*, 2024 WL 1243325, at *37-*38 (S.D.N.Y. Mar. 22, 2024) (same).

third party "to sever its business relationship" with plaintiff).[11]

*Second*, Plaintiff has not alleged facts to establish that pressure from Google caused CMG to terminate its relationship with Plaintiff or that Google's actions amounted "to the sort of extreme and unfair economic pressure that might be wrongful." Mot. at 16-17. As explained, *supra* § II.A, Google pushed CMG to investigate flagged assets and act upon ones it found suspicious, not to end its relationship with Plaintiff. Google expressly encouraged CMG to take its own actions for flagged assets, including Plaintiff's. Moreover, Plaintiff argues that Google pressured CMG by threatening to "cripple CMG's entire CMS operations," Opp. at 13-14, but Plaintiff's specific factual allegations and exhibits (allegedly culled from discovery obtained in litigation against CMG, FAC ¶ 44) describe no such threat over months of correspondence between Google and CMG. Ex. I at 2-3 (Google stating only that it "might need to send them an official warning" or "redact some features or put all claims to pending" for specific assets); FAC ¶¶ 24-25 (same). Even had Plaintiff alleged "some degree of economic pressure," that would not meet the high bar to state a tortious interference claim, i.e., "extreme and unfair economic pressure." *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 2007 WL 2028069, at *4 (E.D.N.Y. July 11, 2007); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 346 (S.D.N.Y. 2008) ("courts have been stingy in their interpretation of this tort," citing cases declining to find wrongful means).

*Third*, Plaintiff has made no attempt to explain how "covert enforcement designations"—i.e., applying enforcement flags to certain of Plaintiff's assets, Opp. at 14—could rise to the level of wrongful means. *See Tsatskin*, 189 A.D.3d at 1298 (wrongful conduct must generally "amount

---

[11] Plaintiff has additionally failed to plead wrongful means based on Google's statements because "pleading the presence of false statements alone is not enough to support a claim for tortious interference." *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008), *aff'd*, 321 F. App'x 58 (2d Cir. 2009).

16

to a crime or an independent tort").

### 3.  Plaintiff Fails To State a Claim for Unfair Competition.

Plaintiff now claims that it is alleging an unfair competition claim based on misappropriation, Opp. at 14; FAC ¶ 106, but has not made factual allegations to support a misappropriation claim.  "The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures" (such as trade secrets, client lists, internal company documents, or business strategies) "by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship."  *Studio - D v. Waverly Staging & Design LLC*, 2025 WL 844420, at *6 (S.D.N.Y. Mar. 18, 2025); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008).  Plaintiff has not alleged facts pleading any of the components of such a claim, such as what the "commercial value of Plaintiff's creator relationships, goodwill, and monetization opportunity," which Defendants allegedly misappropriated, consisted of, FAC ¶ 106; how Defendants ever had access to that "commercial value"; what specific acts by Defendants constituted "misappropriation" of that "commercial value"; or how Defendants, who do not compete with Plaintiff as rights holders, could have gained competitive advantage from misappropriating Plaintiff's "commercial value."  Plaintiff also acknowledges that it must plead that Defendants acted in bad faith, Opp. at 14, but offers no specific factual allegation of bad faith.

Plaintiff's claim should therefore be dismissed.  *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 630 (S.D.N.Y. 2014) (dismissing claim based on "generalized, conclusory statements" that "fail to specify what or how was misappropriated"); *Data Broadcasting Corp. v. Tele-Commc'ns, Inc.*, 1992 WL 350624, at *3 n.4 (S.D.N.Y. Nov. 19, 1992) (dismissing for failure to allege "the specific acts of misappropriation used to gain a commercial advantage" and "specifically what

17

property was misappropriated"); *Berman*, 580 F. Supp. 2d at 209 (dismissing for failure to allege "the bad faith acts by which Counter-Defendants misappropriated").

### C. Plaintiff's Sherman Act Section 2 Claim Fails To State a Claim.

As Defendants explained in their Motion, Plaintiff's Sherman Act Section 2 claim (Count Three) fails to state a claim for multiple reasons. Mot. at 21-25, 27-30. Neither Plaintiff's FAC nor its Opposition correct those deficiencies.

*First*, Plaintiff does not respond to Defendants' argument that Plaintiff failed to allege that the challenged conduct contributed to monopolization or attempted monopolization, Mot. at 29-30, in either its Opposition or its FAC, *see* Opp. at 15-20 (responding only to Defendants' market power, monopoly power, anticompetitive intent, and antitrust injury arguments). Plaintiff has therefore forfeited its Section 2 claim. *Kao v. Brit. Airways, PLC,* 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver."); *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 426, 452 n.32 (S.D.N.Y. 2010), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) (collecting cases that failure "to address substantive grounds raised by Defendants' motions" to dismiss support "a finding that the underlying claims have been abandoned").

Nor could any argument by Plaintiff could have repaired the fundamental problem with Plaintiff's Section 2 theory: Plaintiff repeatedly complains that the challenged conduct affected the ability of Plaintiff to compete in the market for <u>rights holders</u>, but has no explanation for how those alleged effects could contribute to Google's purported monopolization of a different alleged market, the one for <u>automated copyright monetization services</u>. *E.g.*, FAC ¶¶ 86 (alleging "exclusionary conduct" directed solely at "rights holders, including Plaintiff"), 97 (alleging that Defendants' conduct reduced "competition on the rights-holder side of the relevant market"); Opp.

at 19-20 (arguing Defendants' conduct "reduces competition on the supply side of the market"). If anything, Plaintiff's own allegations contradict any link between the challenged conduct and Defendants' alleged monopoly power. According to Plaintiff, Defendants' "platform dominance" is benefited by "cross-side network effects" because "more participating rights holders increase the value of the platform to creators and uploaders." FAC ¶¶ 56, 97. It makes no sense for Plaintiff to then argue that "Defendants' exclusion of independent rights holders" like Plaintiff (who purportedly would increase YouTube's value) serves "to maintain Defendants' monopoly power" in a platform that allegedly benefits from "cross-side network effects." FAC ¶ 92. Plaintiff's Section 2 claim thus also fails to state a claim on the merits. Mot. at 29-30 (citing cases).

*Second*, Plaintiff's Section 2 claim also fails to allege antitrust injury, i.e., that Plaintiff's injury stems from harm to competition. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488-89, 97 S. Ct. 690, 697 (1977). To argue that it has pleaded antitrust injury, Plaintiff repeats the same vague and conclusory assertions that the challenged conduct broadly harmed competition among rights holders—without making any specific factual allegation establishing that Defendants' conduct actually "foreclosed" any other rights holders. Opp. at 19-20 (citing FAC ¶¶ 24, 26, 97).[12] Nor has Plaintiff made any effort to remedy its failure to allege that its injury stemmed not from conduct directed at Plaintiff in particular, but from some cognizable harm to competition, such as increased prices. *See* Mot. at 24-25. Plaintiff's allegations thus continue to describe an individual injury to Plaintiff arising out of a business dispute, with only conclusory

---

[12] Plaintiff claims that invoking the phrase "upon information and belief" is sufficient. Opp. at 19. That is not the law. *Amigo Shuttle Inc. v. Port Authority of N.Y. and N.J.*, 2024 WL 4628330, at *8 (S.D.N.Y. Mar. 26, 2024) (dismissing allegations of harm to competition based "upon information and belief" because they were "legal conclusions that are unsupported by facts"); *M&J Mechanical Corp. v. Caldwell & Walsh Building Constr., Inc.*, 790 F. Supp. 3d 334, 345 (S.D.N.Y. 2025) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation" and "render it non-conclusory.").

assertions of broader harm to competition, so they should be dismissed. Mot. at 22-25 (citing cases); *Attia v. Dollar Fin. Corp.*, 2007 WL 1746806, at *1 (S.D.N.Y. June 15, 2007) (dismissing claim where "the only specific injuries alleged in the Complaint are injuries to Plaintiffs," even though plaintiffs made a "conclusory allegation" that "Defendants' illegal actions have resulted in immeasurable harm to legitimate competition"); *Yellow Page Sol'ns, Inc. v. Bell Atl. Yellow Pages Co.*, 2001 WL 1468168, at *11-*12 (S.D.N.Y. Nov. 19, 2001) ("Neither plaintiffs' conclusory allegation that competition has been destroyed in this market, nor their vague allegation of harm to competition in the market can cure this defect.").

*Third*, Plaintiff has not alleged facts plausibly suggesting that YouTube has monopoly power in a relevant market. Mot. at 28-29.[13] Plaintiff claims to have added "substantial factual grounding" for its monopoly power allegations, but points to alleged statistics about <u>YouTube</u> without alleging how those statistics compare to the entire alleged market. Opp. at 16-17 (citing FAC 59, 87). Because Plaintiff "nowhere sets forth any facts as to" YouTube's "market share," and has "pleaded no facts indicating that" Google "has the power to fix prices or exclude competition in the alleged relevant market," Plaintiff still has not pleaded monopoly power. *Crossword Magazine, Inc. v. Times Books*, 1997 WL 227998, at *2 (E.D.N.Y. May 5, 1997) (dismissing bare allegation "that defendant is the 'major producer' of crossword related products and that its status as such gives it an 'unfair market share'"); Mot. at 28-29.

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's FAC with prejudice.

---

[13] Contrary to Plaintiff's suggestion, nothing in Defendants' Motion "confirms the market definition alleged in the Amended Complaint," Opp. at 16. Defendants' statement about "Content ID's purpose," *id.*, does not bear on whether tools such as TikTok or Meta are functional substitutes serving the same purpose and should therefore be included in the relevant market.

Dated:  March 27, 2026

Respectfully submitted,

*/s/ Erin J. Morgan*

Erin J. Morgan (EM1694)
**DUNN ISAACSON RHEE LLP**
11 Park Place
New York, NY 10007
Telephone: (202) 240-2900
emorgan@dirllp.com

Jeannie S. Rhee (*pro hac vice*)
**DUNN ISAACSON RHEE LLP**
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
jrhee@dirllp.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

I, Erin J. Morgan, hereby certify that a copy of the foregoing Reply Memorandum in Support of Defendants' Motion To Dismiss the First Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 27, 2026.

Dated:  March 27, 2026                    */s/ Erin J. Morgan*

                                          Erin J. Morgan
                                          New York, New York